State vs. Schmidt.

## No. 10,237.

| 41 | 27 |
| 44 | 164 |
| 41 | 27 |
| 46 | 702 |

### STATE OF LOUISIANA VS. JOHN SCHMIDT.

1. Notwithstanding a city ordinance makes a certain map, or plan a part of it, the former may be introduced in evidence, separately, if the latter is specified as on file in the office of the chief of some department of the city government. An objection to the separate offer of the ordinance goes to the effect and not the admissibility of the evidence.

2. The testimony disclosing the loss of the original plan or map, made part of Ordinance No. 4799 A. S., parol proof was admissible of its contents and purport.

3. Satisfactory evidence being furnished to the effect that said ordinance was prepared by the city attorney; that the map annexed to and made a part thereof was prepared by the city surveyor, under his superintendence and direction; and that the radius of six squares from a public market was ascertained by taking the further side of the street from a public market, and walking six squares, the nearest way, any theory heretofore entertained adversely thereto must yield thereto.

The testimony in this case confirms the conclusions announced in *State* vs. *Banter*, 40 Ann. And it is affirmed.

A PPEAL from the First Recorder's Court.

*Murphy, J.*

*Cartleton Hunt*, City Attorney; *Thos. McC. Hyman*, Assistant City Attorney, and *Frank N. Butler* for Plaintiffs and Appellees:

1. The act No. 100 of 1878, being a special law, has not been repealed by the present city charter, acts of 1882.

2. The act of 1878 and ordinance 4798, A. S., adopted thereunder, are not obnoxious to article 46 of the Constitution, which prohibits the granting to any corporation, association or individual any special or exclusive right, privilege or immunity; nor to the Constitution of the United States.

3. The legality and constitutionality of the private market ordinance of the City of New Orleans, No. 4798, A. S., have been fully affirmed by this court.

4. To render the declarations and admissions of a municipal officer evidence they must accompany acts, which acts must be of a nature to bind the corporation. Dillon Mun. Corp § 237 (note).

5. No city officer can bind the corporation unless thereto authorized by law.

6. The municipality cannot relinquish their police powers.

7. The city council were fully authorized by section 3 of act No. 100, of 1878, to prescribe by ordinance the portions of the city in which private markets shall be located, and the distance they shall be removed from the public markets.

8. No restrictions whatsoever are imposed by law on the city council, except, first, to restrain that body from prohibiting the existence of private markets altogether within the municipal limits; and, second, to prevent them from allowing the establishment of private markets within a radius of six squares of a public market.

State vs. Schmidt.

9. Full power and authority was given the city council by said statute to extend and enlarge the area in which private markets should not be permitted to exist. There is nothing in the law to prevent the council, if it deems it proper, to pass an ordinance declaring that no private market shall exist within a radius of seven, eight or nine squares of a private market.

10. The city council have, by Ordinance 4798, A. S., as amended by Ordinance 3081, C. S., fixed and defined the boundaries of those portions of the city within which it is not lawful for private markets to exist; and, as defendant's private market is within that prohibited area, it is unlawfully established, and he is justly liable to the fines imposed.

11. The word "radius," used in the law, means " the shortest distance from the centre to the circumference." In order to have a radius there must be a circle, and by the insertion of that word in the law the general assembly clearly intended to establish a space around each public market, which, from its centre, would extend, in every direction a uniform distance, thus treating all private market men alike.

## W. F. & D. C. Mellen for Defendant and Appellant :

1. That the words " within a radius of six squares," as used in act 100 of 1878, and Ordinance 4798 A. S., mean six squares as one would walk by the shortest route in any direction from the public markets,

2. That the point has never been decided by this court. In State vs. Berard the defendant admitted that the word "radius" in the act was used in its strict technical sense. The point was therefore not at issue, and the decision is not binding on other private market keepers.

3. That even if the above decision should be construed as a final interpretation by this court of the meaning of the words in the act, it is not binding as to the meaning of the same words in the ordinance, for that was not before the court.

4. The city has interpreted for itself the meaning of the term "six squares" as used in the ordinance by annexing to it a certain map designating the prohibited limits. According to this map the term meant six squares in a walk from the public market.

5. The defendant being charged with violating the ordinance must be discharged if his market is not within the prohibited limits of the ordinance, though he may be within the limits prohibited by the act. The act prescribes no penalty for its violation. It is only the violation of the ordinance that is punishable.

6. The act and the ordinance are attempts to raise revenue under the guise of the police power, and one illegal and unconstitutional. State vs. Palania, 34 Ann. 750; State vs. Blaser, 36 Ann. 363.

7. The act and the ordinance create a monopoly and are illegal and unconstitutional.

8. A municipal corporation cannot inflict the penalty of imprisonment as an alternative of a fine, unless the power be granted by express statutory authority. Dillon, § 336–353 ; State vs. Bright, 38 Ann. 1.

9. The representative of the city having told the defendant that the corner he now occupies was without the limits, and he having moved there upon that information, and having invested his money in that property in good faith, for the sole purpose of conducting his market business, believing it was outside of the limits, and having carried on his business there for eight years without being once molested, the city is estopped from claiming that he is within the limits.

The opinion of the Court was delivered by

WATKINS, J. The defendant is appellant from several judgments rendered against him for certain alleged violations of city Ordinance No.

4793, A. S., which provides " that no private market shall be permitted within a radius of six blocks of any public market."

The view we have taken of the merits renders it unnecessary for us to pass upon the various objections urged to the constitutionality and legality of the ordinance and the law.

## I.

Defendant's counsel urged objection to the introduction of said ordinance in evidence, because the plan, which was made a part of it, was not offered at the same time.

This objection goes to the effect and not to the admissibility of the evidence. True, it was made a part of the ordinance by the City Council, but it is referred to as a plan on file in the office of the Administrator of Commerce. This was certifying to its legal effect only, and not that it was, *physically*, incorporated into it. It was properly admitted separately from the plan.

## II.

He also urged objections to the introduction of a certain purported sketch, or tracing of the original map, on the ground that the loss of the original had not been established, and that it was not correct as a tracing. From what appears in the record, it seems that both parties introduced secondary evidence of its contents and purport, and we see no objection to all of it being considered.

## III.

The only question open for discussion is whether the corner of Magazine and Erato streets, at which place the defendant has his private market established, is within prohibited limits.

While the testimony of one of the witnesses for the prosecution is to the effect that defendant's private market is within 2100 feet of St. Mary's Market, or within the prohibited distance, his statements are predicated, exclusively, upon an examination of the tracing to which he refers, and information obtained from others.

Defendant's evidence discloses that, in 1880, he established his market at the corner of Magazine and Gainnie streets, and being prosecuted therefor, he removed it one square further from St. Mary's Market, and re-established it at the corner of Magazine and Erato street, where it still remains. That no further proceedings were taken against him until the affidavits under consideration were filed.

Defendant states, as a witness, that, for two or three years he rented his present stand, and then purchased it.

Two witnesses testify that the corner of Erato and Magazine streets is *seven* squares from St. Mary's Market.

State vs. Schmidt.

Mr. E. H. Farrar was introduced as a witness for the defendant, and stated that he was City Attorney in 1880, and during the time his private market was at the corner of Magazine and Gainnie streets, he prosecuted him, and sent him to jail. At this juncture counsel for the prosecution objected to any further testimony on this subject on the ground that it cannot, in any way, affect the issues in this case.

We think the testimony was properly admitted. That it was competent, and exercised a material bearing on the question at issue.

Having been the City Attorney at that time, he was a competent witness to speak of the transactions and proceedings of the city authorities in the enforcement of this ordinance against the defendant, as circumstances indicating what was the prescribed limit thereunder, in the absence of the plan referred to as lost.

He says that he is perfectly familiar with ordinance No. 4798 ; that he wrote it ; that he is perfectly acquainted with the plan which formed a part of it. He states that it was drawn by the City Surveyor under his instructions, as representative of the city.

" Q. How was the distance ascertained under which the private markets were prohibted ?

" A. The distance was ascertained by the map, which is declared in this ordinance to be a part of it, under section four. * *

" The question then presented itself as to what was meant by radius of six squares, and, in order to prevent trouble about what a radius of six squares meant, I advised a plan to be made to officially designate what places were within the prescribed limits.

    *     *     *     *     *     *     *     *     *

" Q. You say the prohibitory limits were ascertained how ? Was it by measuring so many feet, or by so many walking squares, on that map ?

" A. It was ascertained by taking the far side of the street around the market, and walking six squares the nearest way. * * The limits were distinctly fixed on the map.

" Q. By what measurement ?

" A. By taking the far side and walking six squares the nearest way.

" Q. Then it was by walking squares ?

" A. Yes, sir."

Giving full weight to the evidence of the prosecution, predicated upon what is alleged to be a tracing from the original map, the testimony of Mr. Farrar appears to be conclusive against the State.

Whatever *theory* may have been entertained with regard to the meaning of the phrase " within a radius of six squares," as contained in the

law and ordinance, the latter is made plain and unambiguous by the quoted testimony. It serves to confirm the conclusions announced by us in the recent case of *State* vs. *Barthe*, 40 Ann., which were couched in the following words, viz:

" Manifestly the lawmaker knew that in a city no one can move from one point to another on an air line, hence the language ' a radius of six squares ' must have been intended to mean a route, or distance of six squares, in all directions, from a public market, such as a human being could use."

Applying this test to the various charges against the defendant and the prosecution must fail, because his market is more than six walking squares from St. Mary's Market, counted the nearest way, and hence, not within the limit prohibited by the ordinance in question, and consequently, the several judgments appealed from must be reversed.

It is, therefore, ordered and decreed, that the several judgments appealed from be annulled and reversed, and the defendant discharged, with cost in his favor.

The Chief Justice and Judge Fenner, concur in decree.