No. 13,079.

THE CITY OF NEW ORLEANS VS. LUCIEN F. LOZES.

SYLLABUS.

Ordinance No. 14,807, C. S., which provides a meat inspection service, and a precedent observance thereof as a condition of the right to either expose same for sale, or to sell the same in the city of New Orleans, is legal, valid and constitutional; and same evidences a proper and legal exercise of police power, for the protection and preservation of the public health and sanitation of the municipality.

In this regard, the city has ample warrant of law to pass ordinances requiring *ante-mortem* inspection of animals intended to be slaughtered for use as human food, as well as those requiring *post mortem* inspection of the meat of such animals before same is placed upon the market for sale.

ON APPEAL from the First Recorder's Court of the City of New Orleans. *Finnegan, J.*

*James J. McLoughlin,* Assistant City Attorney, and *Saml. L. Gilmore,* City Attorney, for Plaintiff and Appellee.

*B. B. Howard, H. O. Hollander* and *A. M. Aucoin,* for Defendant, Appellant.

*Saunders & Miller* as *amici curiae.*

Argued and submitted March 11, 1899.
Opinion handed down April 3, 1899.
Rehearing refused May 29, 1899.

The opinion of the court was delivered by

WATKINS, J. An affidavit was made against the defendant to the effect that, on the 4th day of December, 1898, at about the hour of 4 o'clock a. m., in the Ninth Street Market, in said city, he did violate Ordinance 14,807, Sections one (1) and two (2), by selling or offering for sale, meat, without same having been first inspected, marked or tagged; whereupon, he was charged with having been guilty of an offense for which he should be arested and dealt with according to law.

To this charge the defendant tendered the following demurrer. viz.:

1st. That the pretended ordinance No. 14,807, O. S., is illegal, *ultra vires,* null and void and of no effect, for the reason that the city council of the city of New Orleans is and was without authority to pass same.

2nd. That said pretended ordinance is unconstitutional, because it seeks to impose a tax which has already been imposed by the State of Louisiana; and the same is illegal, null and void, being in conflict with the provisions of Act 118 of 1869, Act 144 of 1877, Extra Session, and Act 87 of 1888.

3rd. That said ordinance is illegal, because by the enactment of said laws, with regard to the inspection of meats intended for consumption as human food within the parish of Orleans, the entire subject matter "has been entirely and completely placed under the power and jurisdiction of the State Board of Health of the State of Louisiana."

4th. That said ordinance is illegal, because it seeks to set aside and render of no effect the provisions of Act 87 of 1888, under and in pursuance of which his meat had been already inspected, and a proper certificate issued to him, and for which he had already paid the necessary and legal fees; and, hence, this is an attempt on the part of the city of New Orleans, through its board of health, "to exact a dual fee for one and the same service," in violation of the Constitution and law.

This demurrer was overruled, and the defendant was tried, upon the introduction of evidence was convicted, and sentenced to pay a fine of fifteen dollars, and in default of payment of same, to suffer imprisonment in the parish prison for a period of fifteen days; and from that sentence, he prosecutes this appeal.

The case comes to us on the ground that, the recorder erred, in over-ruling the defendant's demurrer.

As explanatory of the situation, we make the following extract from the brief of defendant's counsel:

The defendant was a butcher, doing business in the city of New Orleans, and having his *cattle* slaughtered, in the parish of St. Bernard, under the supervision and regulations of the State Board of Health, paying for the inspection and receiving a certificate therefor, to the effect that the *caltle* inspected were healthy, and fit for human food, and had been slaughtered at the Crescent City Slaughter House.

The *cattle* are slaughtered, and the city seeks to collect from him, under Ordinance 14,807, C. S., another fee for the same service, through the inspector of the Municipal Board of Health of the city of New Orleans.

Said board-inspected the *meat,* but refused to tag the same, because the defendant declined to pay the second fee for said inspection and he was arested under the charge of selling *meat* which had not been inspected, and, thereupon, he entered the demurrer on the grounds stated.

The first contention of defendant's counsel is, that said pretended Ordinance 14,807, C. S., is illegal, null and void, because the city was without power to pass the same, it being in conflict with Act 192 of 1898, and Act 87 of 1888, and Act 118 of 1869—said legislative enactments having vested the exclusive power and authority in the State boards of health specially provided for therein, and repealed all laws or parts of laws in conflict or inconsistent therewith.

The second contention is, that said ordinance is unconstitutional, because it seeks to impose a tax that has already been imposed by the State of Louisiana for the same service, and for that reason, it is in direct conflict with the provisions of the legislative acts referred to.

Or, in other words, that those respective acts especially impose an, inspection fee for meat slaughtered at the Crescent City Slaughter House, to be brought into the city of New Orleans *for human consumption,* and that, hence, the city of New Orleans is without power to impose another tax for exactly the same service.

Defendant's further contention is, that by laws enacted for the regulation and inspection of *meats,* intended for sale in the parish of Orleans, for human consumption, the entire matter is exclusively in-

the hands of the State authorities, and that the city of New Orleans has nothing to do therewith.

Counsel for the defendant makes the following statement of the facts on which these contentions are founded:

That the defendant in this case had his *meats* inspected under Act 87 of 1888, and Act 192 of 1898, by the officers of the State Board of Health. .

That the city Board of Health is only auxiliary to, and a branch of the State Board, and is specifically prohibited from acting independ-. ently of the State Board; but, on the contrary, is compelled to act under the supervision and advice of the State Board of Health, and to do no act in conflict with the powers and duty of the State Board.

This ordinance therefore provides that the second fee herein sought to be collected shall be paid practically to the same health authorities, which is in violation of the said Constitution.

Counsel further contend that the only inspection that was offered to the accused was within the limits of the parish of St. Bernard, and therefore, outside of the parish of Orleans; and, consequently, not within the limits prescribed by the ordinance, that is, the city of New Orleans.

That no inspection is offered or attempted in the city of New Orleans under said ordinance.

Re-stating and combining the foregoing objections, counsel for the defendant submits that the ordinance in question is illegal, unreasonable, unnecessary, and serves no good purpose whatsoever; but, on the contrary, it places an unnecessary burden and tax upon the people and upon the accused, in violation of the tenor and spirit of said laws.

The contention of the city attorney is that Ordinance 14,807, C. S., imposes a penalty upon any person offering untagged and uninspected *meat* for sale, and that the defendant, as a butcher, is charged with having offered for sale in a public market of the city of New Orleans, *meat* intended for human food, which had not been inspected by the inspectors of the City Board of Health—the *meat* having no tag or stamp showing that such inspection had been made.

That consequently, the question presented is, of the power of the city to pass said ordinance, because the power of inspecting *meats* was exclusively vested in the State Board.

The city attorney further says: "There is no question of the "power of the city to pass any ordinance to protect the health of its

" citizens, nor can it be disputed that an ordinance providing for the
" inspection of meat which is to be consumed in New Orleans is a
" health ordinance.

"Now, unless the State has divested the city of the right to protect
" its inhabitants from bad *meat,* then the power to protect resides in
" the council.

"But, we need not go that far. The very act which the defendant
" cites, Act 192, of 1898, not only divests the State Board of Health of
" any supervision whatever over *meat* which is to be consumed by the
" people of New Orleans, but expressly confers it upon the City Board
" of Health, exclusively.

"The Constitution of 1898, Article 296, reads: 'The General As-
" sembly shall create for the State, and for each parish and munici-
" pality therein, Boards of Health, and shall define their duties and
" prescribe the powers thereof.'

"Act 192 of 1898 is entitled: 'An act to carry into effect Article 296
" of the Constitution of 1898.' And Section 9 of the act, says:

" 'The Municipal Board of Health of the city of New Orleans shall
" have the exclusive right to the collection of all fees and charges,
" now being made by the present State Board of Health, within the
" city of New Orleans, other than those accruing from coal oil inspec-
" tion and the registration of physicians, midwives and dentists.

"The Municipal Board of Health of the city of New Orleans shall
" have the exclusive supervision or authority over *meat inspection
" service* and sanitary regulations at the slaughtering pens, or abbat-
" toir, in the parish of St. Bernard, with regard to all *meat* intended
" for human consumption within the city of New Orleans.' The same
" section nine repeals all laws or parts of laws inconsistent with or in
" conflict with this act of 1898.

"From which it is plain that the entire and exclusive control of the
" inspection of *meats* in the parish of St. Bernard, at the slaughter
" pens, is conferred upon the City Board of Health in so far as *meat
" intended for human consumption* in New Orleans is concerned.

"Such being the case, any other inspection is irregular, *ultra vires,*
" null and void. It is admitted in this case that the *meat* offered for
" sale by the defendant was intended for consumption in the city of
" New Orleans, and came from animals slaughtered at the slaughter-
" ing pens in the parish of St. Bernard. Such being the facts, it is
" incompetent for any other inspector than the inspector of the City

" Board of Health to issue any certificate of inspection of *meats*
" slaughtered in St. Bernard for New Orleans consumption; and the
" attempt of the defendant to introduce in evidence a certificate of the
" inspection of certain *live cattle* issued by a person not the inspector
" of that board, was properly objected to by counsel for the city and
" the ruling of the court admitting such evidence was incorrect.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

"That said certificate related solely to *live cattle,* whereas the city
" board's inspection is of dressed meat only."

His contention is further, that defendant's case rests upon the provisions of the act of legisature above referred to, which relate exclusively to *cattle on the hoof,* and not at all to *dead meat;* and, if they did refer to *dead meat,* they would be superceded and repealed by the provisions of Act 192 of 1898, above referred to.

Summing up all these various contentions, the question comes to this, whether the city, in the exercise of its police power, or under the terms of the Constitution and law of 1898, has the power to regulate the inspection of *meat* at the slaughter house, or in the city of New Orleans, which is intended for use as human food; or, whether the same are inoperative by reason of the fact that said former laws confer upon the State Board of Health the power of inspecting live cattle intended to be slaughtered for use as human food.

The general rule governing the construction of statutes, as well as precepts of the Constitution is, that apparently conflicting provisions of either or both, shall rather receive that construction which will render them harmonious, than one which will render any portion inoperative and void.

The several acts referred to and relied upon by counsel for the defendant relate, exclusively, to the slaughtering of live cattle, that is, those on foot, or on the hoof, which slaughtering is and was, in contemplation thereof to be done outside of and beyond the territorial limits of the city of New Orleans.

Ordinance No. 14,907, C. S., provides, amongst other things, that
" it shall not be lawful for any person, firm or corporation, restaurant,
" or hotel, to sell or offer for sale, or deliver the *meat* of any animal,
" not considered game or fowl, intended for human food, within the
" city of New Orleans, without the same has been first inspected and
" passed upon and approved by the officers appointed and empowered

" for such duty by the municipal Board of Health of the city of New
" Orleans, etc."

It further provides "that such *meat,* when so inspected, passed upon
" and approved, shall be properly marked and tagged by said inspect-
" ors, and same shall not be allowed upon the stalls of any market,
" whether public or private, or exposed in any other way, or at any
" other place, or delivered to any hotel, restaurant, person or persons,
" unless so tagged, and marked, after having been inspected by the in-
" spectors of said Board of Health."

It further provides "that for the purpose of meeting the costs of
" said inspection, the owner of the meat inspected, or the person in
" possession of the meat inspected, shall pay the following inspection
" fees to the Board of Health"—enumerating them in detail.

This ordinance, in terms, includes the case presented by the de-
fendant, and brings him within the penalty therein provided for a vio-
lation thereof.

It appears quite evident, that the ordinance deals exclusively with
the inspection of *meat,* or *flesh* of animals already slaughtered, and
which is intended for use as human food within the city of New Or-
leans; and that it is an essentially different subject-matter from that
with which the general assembly dealt in the statutes quoted—the in-
spection of *live cattle,* although intended for human food.

For, notwithstanding the live cattle upon proper and careful inspec-
tion are found healthy and suitable for the purpose of being slaught-
ered for human food, *non constat,* that when slaughtered and prepared
for market, the meat is suitable for human food, when subsequently
put upon the market for sale.

Were no restraint put upon a subsequent sale of fresh meats by
means of contemporaneous inspection by the proper officers of the
City Board of Health, great abuse of the privilege might result, and
great and incalculable injury be inflicted upon the community
thereby, notwithstanding a rigid and careful inspection had been
made prior to the slaughter of the animals.

But, if this were not so, we are of opinion that the ordinance is fully
authorized by the law of 1898, and that the statute is constitutional.

Act 192 of 1898 was passed for the express purpose of putting into
operation Article 296 of the Constitution of 1898, which requires the
general assembly to "create for the State and for each parish and

City vs. Lozes.

"municipality therein, boards of health, and to define their duties and
"prescribe the powers thereof."

Its further object is to provide for the protection and preservation
of the public health, and for "a general sanitation of the State and a
"local sanitation of parishes and municipalities, etc."

That act provides "that the council or legislative body of each and
"every incorporated municipal government in the State shall estab-
"lish and organize a town or city Board of Health"—indicating the
particular method of the establishment and organization thereof.

It specially authorizes and requires said municipal boards "to ap-
"point a sanitary officer, whose duty it shall be to enforce the require-
"ments of said board in all matters of sanitation, etc." *Ibid*, Section
five (5).

It further specially provides "that said parish and municipal
"boards shall have power and authority to pass health and sanitary
"ordinances for defining and abating nuisances, dangerous to public
"health;       *       *       *       *       *       *       *       *       *
"to regulate the carrying on of trade and business injurious to public
"health;       *       *       *       *       *       and generally (to pass)
"all health and sanitary ordinances necessary, and incident to the
"proper local sanitation of the parish, city or town in which they
"exercise their powers."

It further provides, *ex industria,* that it is the object and purpose
of this act "to entrust full power and authority to such local boards
"to establish, control and administer all matters of *strictly* and *purely*
"*local sanitation,* not affecting other portions of the State." *Ibid.,*
Section seven (7).

A comparison of the foregoing provisions of the statute with those
of Ordinance No. 14,807, C. S., will show them to be perfectly harmon-
ious and consistent. It is of no material consequence that a munici-
pal Board of Health now existing or which may be hereafter created
would possess a similar power to pass ordinances upon the same, or
like subjects; as the city is primarily charged with the duty of protect-
ing and preserving the public health, and of maintaining the munici-
pality in a proper sanitary condition.

In furtherance of that idea, we are referred to the provisions of
several ordinances prior in date to that of No. 14,807, C. S., which was
adopted on November 10th, 1898.

The first is Ordinance No. 13,487, C. S., bearing date July 6th, 1897,

which provides that "it shall be unlawful for any person, firm or cor-
"poration to sell, or offer for sale, or deliver the *meat* of any animal
"not considered game, intended for human food, within the city of
"New Orleans, without same having been first inspected and passed
"upon and approved by the officers appointed and empowered for such
"duty by the Board of Health."

It provides further "that such meat when so inspected, passed upon,
"and approved, shall be marked or tagged by said inspectors, and same
"shall not be allowed upon stalls of any market whether public or pri-
"vate, unless so tagged or marked after having been inspected by said
"inspectors of the Board of Health."

It further provides for the punishment of persons who violate its
provisions.

That ordinance was, afterwards, supplemented, by the passage of
Ordinance No. 13,689, bearing date October 5th, 1897, which dealt
with the counterfeiting of any tag or stamp provided for in the
original ordinance, and affixing a penalty for such an act.

The particular significance of the foregoing ordinances is, that they
precede in date both the Constitution and statute of 1898, and appear
never to have been assailed or questioned as either illegal or unconsti-
tutional on the grounds now stated, for the first time, notwithstanding
they are precisely similar in terms to those of Ordinance No. 14,807.

But, there is an additional ordinance, No. 14,548, bearing date
August 31st, 1898—and which appears to have been adopted interme-
diately between the passage of the act of 1898, and Ordinance No.
14,807—which specially deals with "the slaughtering of cattle and
"other animals at the abbattoirs, and providing a system of inspection
"of meats."

That ordinance provides, amongst other things, "that all *meats*
"brought into the parish of Orleans requiring inspection under
"Ordinance 13,487, C. S., must bear evidence of having undergone
"*previous inspections, i. e.*, must bear the stamp or certificate of some
"specially accredited State, municipal, or United States official, at-
"testing the fact that the animal has passed both an *ante* and *post*
"*mortem* inspection." Sec. 10, Ordinance No. 14,548.

This ordinance puts the proposition of the city council in a very
plain light, by requiring that all meats brought into the city, which
are intended for use as human food, shall bear evidence of having

undergone *previous inspections;* that is to say, that same have passed
" both *ante* and *post mortem* inspections."

This ordinance conforms the inspections of meats to the idea herein-
before outlined; and it seems to us to be a most reasonable regulation,.
and one tending to the protection of the public health.

It shows clearly that in the appreciation of the city council a
single inspection of cattle on the hoof, before being slaughtered, was·
insufficient and inadequate; and in that opinion, we concur.

We find nothing in either the Constitution or statute of 1898, con-
trary thereto.

In our opinion, Ordinance No. 14,807, C. S., is legal, valid and con-
stitutional.

Judgment affirmed.

MONROE, J., takes no part, as he was not a member of the court when
the case was submitted.