LANSTON MONOTYPE MACH. CO. v. CURTIS.

(Circuit Court of Appeals, Second Circuit. June 25, 1915.)

No. 279.

1. COMMERCE ☞60—INTERSTATE COMMERCE—VALIDITY OF STATE LAW.
   Personal Property Law N. Y. (Consol. Laws, c. 41) § 65, provides that when articles are sold, title to remain in the vendor until payment of the price, and they are retaken by the vendor, they shall be retained for 30 days, during which time the vendee may comply with the contract; that after such period, if the terms of the contract are not complied with, the vendor may cause the articles to be sold at public auction; and that, unless they are so sold within 30 days after the expiration of such period, the vendee may recover of the vendor the amount paid on such articles under the contract. *Held*, that while, as applied to a sale of property

to be sent from Pennsylvania to New York, this statute indirectly affects interstate commerce, it is in no sense a regulation thereof.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 91–95; Dec. Dig. ☞60.]

2. SALES ☞481—CONDITIONAL SALES—RETAKING PROPERTY—RECOVERY OF PAYMENTS.

Where a contract for the conditional sale of property to be sent from Pennsylvania to New York was executed in New York, and the property was to be used there and paid for there, .the vendor, when it retook .the chattels upon the vendee's default, did so subject to the New York law, and, not having sold the property at public auction, as required by Personal Property Law N. Y. § 65, it was liable to the vendee for the amount paid by him on account.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig. ☞481.]

3. SALES ☞481—CONDITIONAL SALES—RETAKING PROPERTY—RECOVERY OF PAYMENTS.

Where a vendor of property sold conditionally agreed to accept advertising in a magazine in .part payment, and it subsequently retook the property because of the vendee's default in making stipulated cash payments, and did not sell the property at public auction, as required by Personal Property Law. N. Y. § 65, the purchaser was entitled to recover the amount paid by publishing the advertisement, though it was not shown that he paid anything for the advertising, parted with any value, or suffered any detriment in relation thereto.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig.` ☞481.

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

In Error to the District Court of the United States for the Southern District of New York.

Joline, Larkin & Rathbone, of New York City (L. H. Freedman, of New York City, of counsel), for plaintiff in error.

Esselstyn & Haughwout, of New York City (Everett J. Esselstyn and J. A. Haughwout, both of New York City, of counsel), for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. December 27, 1911, a contract was executed by William B. Curtis and one Green, agent for the Lanston Monotype Company, for the conditional sale for $5,519 of certain machinery to be shipped by the company from Philadelphia f. o. b. to William B. Curtis at New York. The material provisions were as follows:

"The purchaser hereby agrees to buy said property as above specified and to pay therefor the said sum of fifty-five hundred nineteen and ⁰⁰/₁₀₀ dollars ($5,519.00) in the following manner: Beginning March 1, 1913, forty (40) equal consecutive monthly payments of fifty and ⁰⁰/₁₀₀ dollars ($50.00) each, and one month after the last of these payments a final payment of fifty-nine and ⁰⁰/₁₀₀ dollars ($59.00). The balance, $3,240, to be paid in advertising as per rider attached to and made part of this contract."

"It is further agreed that the title to the said property shall remain in the Monotype Company until such mortgage be given, or until the purchase price, with interest, has been fully paid, and that, in case of any default in any of the terms of this contract, the Monotype Company shall have the right to

take immediate possession of the property, together with all accessories and appurtenances delivered under this contract, as though this contract had never been made. And it is further agreed that the amount of the payments already made, plus the amount of any past-due purchase notes given to secure installments of payments, or the amount of any past-due installments of payments as the same shall be on the day of the resumption of possession of the property by the Monotype Company shall be fixed and determined as the liquidated measure of compensation to the Monotype Company for the use of the property by the purchaser.

"It is further agreed that, in exercising its right to resume possession for any default in any of the terms of this contract, the Monotype Company may enter upon the premises of the purchaser, and any other premises where the property may be found, and take away, repossess, and enjoy the said property, without any liability, accountability, or responsibility of the Monotype Company to the purchaser or any other person or persons for so doing. * * * The Monotype Company retains the right, for seven days from the receipt hereof by it at its office at Philadelphia, to cancel this contract upon giving notice in writing of its intention so to do to the purchaser."

The rider attached to the contract provided:

"For the final payment of thirty-two hundred and forty $^{00}/_{100}$ dollars ($3240.00) specified in the contract to which this is attached and made part, the Monotype Company agrees to take a full-page advertisement on the back cover of the Publishers' Guide for fifty-four (54) consecutive monthly issues, beginning with the issue for January, 1912, upon the following conditions:

"First. That during the life of this contract the purchaser agrees to use in his magazines the product of no other composing machine but the monotype and to install or operate in his own plant no composing machines but monotypes.

"Second. That in the event of the purchaser not being able to furnish the advertising specified above, the purchaser agrees to pay to the Monotype Company sixty and $^{00}/_{100}$ dollars ($60.00), with 6 per cent interest from one month after date of the bill of lading, for the equipment specified in the contract to which this is attached and made part, for each month the Monotype Company's advertisement is not carried as specified above."

Curtis delivered to the company his 40 promissory notes for $50 each and one for a final payment of $59, no one of which has been paid, and he paid on account the sum of $1,330 in the shape of a full-page advertisement on the back cover of 16 issues of the Publishers' Guide at $60 each, $960, and three inside page advertisements, of the value of $50 each, $150, and $220 acknowledged to have been paid on the execution of the contract.

July 16, 1913, Curtis having defaulted in the payment of several of the installment notes, the Monotype Company entered upon his premises, retook all the machinery, and reshipped it to Philadelphia, without conforming to the Personal Property Law of New York regulating conditional sales, which provides:

"Sec. 65. Sale of Property Retaken by Vendor.—Whenever articles are sold upon the condition that the title thereto shall remain in the vendor, or in some other person than the vendee, until the payment of the purchase price, or until the occurrence of a future event or contingency, and the same are retaken by the vendor, or his successor in interest, they shall be retained for a period of thirty days from the time of such retaking, and during such period the vendee or his successor in interest, may comply with the terms of such contract, and thereupon receive such property. After the expiration of such period, if such terms are not complied with, the vendor, or his successor in interest, may cause such articles to be sold at public auction. Unless such articles are so sold within thirty days after the expiration of such period, the

vendee or his successor in interest may recover of the vendor the amount paid on such articles by such vendee or his successor in interest under the contract for the conditional sale thereof."

April 1, 1914, Curtis brought this suit against the Monotype Company to recover $3,619; that is, the amount paid on account as above, $1,330, together with the amount of notes not matured at the time of the retaking. In its answer the Monotype Company set up a defense that the Personal Property Law of New York was a regulation of commerce, and therefore void as to a contract of sale of property to be sent from Pennsylvania to New York. It also pleaded a counterclaim of $1,140 for the use of the machinery at the rate of $60 a month between the time Curtis received it, December 27, 1911, and the day preceding the retaking by the Monotype Company, July 15, 1913. Judge Hough held that the contract was governed by the law of New York, refused to receive evidence of the reasonable value of the machinery while in the possession of Curtis, and directed a verdict in his favor for $1,330, without interest. From the judgment entered thereon this writ of error is taken.

[1] We do not think the section of the Personal Property Law relied upon by the defendant was a regulation of interstate commerce. No doubt it does indirectly affect such commerce, but it is in no sense a regulation of it. The purpose of the legislation is to protect the public against onerous and unreasonable contracts of conditional sale very likely to be misunderstood. Kidd v. Pearson, 128 U. S. 1, 23, 9 Sup. Ct. 6, 32 L. Ed. 346.

[2] The contract having been executed in New York, and the Monotype Company not having exercised its right to cancel, the same is in our opinion a New York contract, to be governed by the law of that state. The parties evidently contracted with reference to the law of New York. The machinery was to be used there, and paid for there, and in case of the purchaser's default the remedies of the vendor were to be availed of there. Hence, when the Monotype Company retook the chattels, it did so subject to the provisions of the New York law regulating conditional sales. Not having sold the machinery at public auction as required by that law, it was liable to Curtis for the amount paid by him on account.

[3] The Monotype Company made a further objection that the advertisements furnished by Curtis were not payments to it within the meaning of the statute; there being no evidence that he ever paid the Publishers' Guide anything for the advertising, or that he parted with any value or suffered any detriment in relation thereto. We think these considerations immaterial. Curtis gave the Monotype Company the advertising he undertook to furnish, and it is of no consequence how he obtained it.

The judgment is affirmed.