*265
 
 O’NIELL, O. J.
 

 The question in this case is whether a market ordinance of the town of St. Martinville is valid. The ordinance provides for a public market, owned and conducted by the municipality, and forbids butchers and retailers of butchers’ meat to sell elsewhere than in the market. As amended, the ordinance now forbids also delivering in the town any butchers’ meat that has not been exposed for sale in the public market. It is this amendment, forbidding delivering in the town meat that is sold outside of the town, that the district court has declared ultra vires and unconstitutional.
 

 Ludovic Dugas, the defendant here, is a butcher in the parish of St. Martin, near St. Martinville. Por several years he rented a stall in the public market in St. Martinville and sold his meat there. At that time the market ordinance forbade the selling of butchers’ meat elsewhere in the town than at the public market, but did not in terms forbid delivering in the town me'at sold elsewhere than in the public market. Dugas therefore established a market of his own outside of the town, and gave up his stall in the public market. Thereafter he did not sell meat in the town, but delivered to his customers in the town meat that he sold at his place of business, outside of the town; most of the sales being made on telephone orders from customers in the town. The town council then amended the market ordinance, as we have said, to fit Dugas’ ease. The eighth section of the ordinance, as amended, reads:
 

 “That butchers and retailers of butchers’ meat shall not expose same for sale elsewhere thaD at the regular stalls in the public market provided for in this ordinance, and that no person shall sell or deliver any butchers’ meat within the limits of the town of St. Martin-ville, Louisiana, except such meats as are exposed for sale at the public market, in said town of St. Martinville, Louisiana.
 

 “Any person violating the provisions of this section shall be fined,” etc.
 

 Dugas was prosecuted in the may-’ or’s court for violating the eighth section of the ordinance by delivering in the town meat that he had sold outside of the town and that had not been “exposed for sale at the public market.” He stood mute, declining to plead; and the 'mayor entered a plea of not guilty for him, and, on proof of the facts, convicted him and sentenced him to pay a fine or be imprisoned. He appealed to the district court, and there, for the first time, pleaded that the eighth section of-the ordinance was ultra vires.and unconstitutional. The court sustained the plea and dismissed the prosecution. Thereupon the attorney for the town gave notice that he would invoke the supervisory jurisdiction of this court. Later he thought it possible that the district judge might grant him an appeal to the Supreme Court on the question of constitutionality or legality of the ordinance; so he asked for the appeal. The judge refused to grant it; and his ruling was correct, because the ease had been decided on appeal. If the question of constitutionality or legality of the ordinance had been tendered in the mayor’s court, and decided, there, either the town or the defendant would have had a right of appeal directly to the Supreme Court upon the question of constitutionality or legality of the ordinance, and Dugas would have had a right of appeal to the district court on other questions. State ex rel. Hart v. Judge, 113 La. 654, 37 So. 546; Town of Many v. Franklin, 115 La. 638, 39 So. 740; City of New Orleans v. New Orleans Butchers’ Co-operative Abattoir Co., 153 La. 536, 96 So. 113.
 

 The attorney for the town had some hope that Dugas might yet plead in the may- or’s court that the ordinance was unconstitutional or illegal, so Dugas was prosecuted again. But again he stood mute, was tried, convicted, and sentenced, and again he appealed to the district court, and there pleaded that the eighth section of the ordinance
 
 *267
 
 ’ was unconstitutional and ultra vires. He pleaded also that the issue had become res judicata by the judgment of the district court in the first prosecution. The court sustained the plea of res judicata, which we take to mean that, for the reasons given in the written opinion which he had rendered 'in the first prosecution, the judge declared again that the eighth section of the ordinance was ultra vires and unconstitutional. The second prosecution was therefore dismissed; and the town, having no other remedy, has brought the matter here by writs of certiorari and prohibition.
 

 The doctrine of res judicata does not apply to criminal prosecutions. The reason is that it does not settle questions of law, but merely settles disputes arising from a particular or given state of facts. It would not do for res judicata to grant the defendant, Dugas, immunity from prosecution, while all other persons remain subject to prosecution, for violation of this or any other municipal ordinance.
 

 The district judge ruled that the eighth section of the ordinance violated the state Constitution because, as he thought, the title of the original ordinance was not broad enough to include the subject-matter of the amendment, forbidding delivering in the town meats sold outside of the town. The provision in the Constitution of the state, requiring every statute to have an appropriate title, has reference only to state statutes, not to municipal ordinances. Callaghan v. Town of Alexandria, 52 La. Ann. 1013, 27 So. 540. The only law that requires that municipal ordinances shall have an appropriate title is the provision in the thirty-third section of the Act 136 of 1898, p. 239, that “an ordinance shall not contain more than one subject, which shall be clearly expressed in its title.” The provisions of the act of 1898, however, according to its fortieth section, : do not apply to a municipality .that was in existence when the act went into effect and that has not elected to come within its provisions. Town of Ruston v. Dewey, 142 La. 296, 76 So. 719. The town of St. Martinville was first incorporated in 1843, by the Act 110 of that year, and its charter was amended by the Act 44 of 1877. It seems that the municipality is now working under a special charter adopted on or about the 4th of April, 1898, according to the provisions of the Act 135 of 1896, authorizing municipalities to adopt a charter by vote of the citizens. It is conceded that the town of St. Martinville has not elected to come under the provisions of the Act .136 of 1898. Therefore the eighth section of the ordinance in question is not invalid for insufficiency of the title of the original ordinance.
 

 Several other reasons for which the court declared the eighth section of the ordinance invalid are given in an elaborate opinion, which we restate in- substance thus: (1) That the ordinance is ultra vires, on the theory that the authority of a municipality to establish a public market, or the general authority to regulate markets, does not include the authority to forbid the selling of meat elsewhere than at the public market, or to forbid the delivering of meat sold outside of the town and not “exposed for sale at the public market.” (2) That the ordinance is arbitrary and unreasonable, and discriminates in favor of persons residing in the town and against those residing outside of the town, and is therefore an attempt to deny due process of law and the equal protection of the laws, in violation of the second section of article 1, the Bill of Rights, of the Constitution of Louisiana, and the Fourteenth Amendment of the Constitution of the United States. (3) That the ordinance is an attempt on the part of the town to monopolize the market business. (4) That the dis
 
 *269
 
 crimination against persons residing outside of the town extends even to the residents of other states, who might desire to ship fresh meat into St. Martinville, from Kansas City, for example; and that the ordinance, therefore, in so far as it undertakes to forbid the delivering of meat that has not been exposed for sale in the public market, is violative of the commerce clause, the third paragraph of-the eighth section of article 1 of the Constitution of the United States.
 

 Our opinion is that the eighth section of this ordinance is a reasonable police regulation, not amendable to any of the objections stated. Nearly a century ago this court decided, in Morano v. The Mayor, 2 La. 217, that the authority of a city to establish markets meant the right to confine the sale of meats, oysters, etc., to the market places established by the municipal council. In the course of his opinion Justice Martin, for the court, said:
 

 “The city council has the power to establish markets, and to provide for the cleanliness and salubrity- of the city.
 

 “In establishing markets they designate certain spots 'or places for the sale of certain articles of provision; in doing so they facilitate the people in the purchase of, provisions of first necessity, by confining, the sale of them to particular places and hours of the day — and they facilitate the inspection of provisions; and by the hire of stalls they raise money to defray the expenses of building market houses, and pay the salaries of officers they appoint to prevent the sale of unsound provisions — and they have an undoubted right to prevent the violation of ordinances they may pass in establishing markets,”
 

 The same has been said substantially, if not literally, in the following cases: City of New Orleans v. Stafford, 27 La. Ann. 417, 21 Am. Rep. 563; State v. Gisch, 31 La. Ann. 545; State v. Natal, 39 La. Ann. 440, 1 So. 923; Id., 139 U. S. 621, 11 S. Ct. 636, 35 L. Ed. 288; State v. Schmidt, 41 La. Ann. 27, 6 So. 530; Gossigi v. New Orleans, 41 La. Ann. 522, 6 So. 534; State v. Sarradat, 46 La. Ann. 702, 15 So. 87, 24 L. R. A. 584; State v. Namias, 49 La. Ann. 620, 21 So. 852, 63 Am. St. Rep. 657; City of New Orleans v. Lozes, 51 La. Ann. 1180, 25 So. 979; City of New Orleans v. Graffina, 52 La. Ann. 1082, 27 So. 590; City of New Orleans v. Faber, 105 La. 210, 29 So. 507, 53 L. R. A. 165, 83 Am. St. Rep. 232; Town of Crowley v. Rucker, 107 La. 213, 31 So. 629; Murat v. City of New Orleans, 119 La. 513, 44 So. 282. See, also, 3 McMillan on Mun. Corp. p. 2140, § 966, and Dillon on Mun. Corp. (4th Ed.) § 1380.
 

 In Natal v. State, 139 U. S. 621, 11 S. Ct, 636, 35 L. Ed. 288, it was observed:
 

 “By the law of Louisiana, the regulation and control of markets are matters of municipal police, and may be intrusted by the Legislature 1o a city council, to be exercised as the public health and convenience may require.”
 

 The ordinance that was contested in City of New Orleans v. Faber, 105 La. 212, 29 So. 507, 53 L. R. A. 165, 83 Am. St. Rep. 232, forbade the establishment of a private market within 3,200 feet from any public market. The effect of the ordinance was to put the defendant, Faber, and others out of business; as to which the court said:
 

 “But it is said that the defendant in this case, and others similarly situated, will be.compelled to abandon the private market business, because the ordinance complained of will force them into the uninhabited sections of the city, where such business will be unprofitable. * * * The fact, that a particular individual is unable to find in a place beyond the prescribed limit within which he can conduct his business profitably does not affect the question, since, in the exercise of the [police] power and discretion vested in it, the council might at once, and in direct terms, prohibit the sale of provisions elsewhere than in the public markets.”
 

 In the opinion last quoted Tiedman on State and Federal Control of Persons and Property, vol. 1, p. 557, and Dillon on Municipal Corporations (4th Ed.) § 1380, are cited, to show that, in this country, the Legislature
 
 *271
 
 of almost every state has given to the municipal agencies the authority to regulate markets, and that such grants of authority are construed more liberally than the grants of extraordinary or unusual powers. And, answering the argument that the ordinance tended to create a monopoly for the city, the court said:
 

 “It is said that it is the purpose of the ordinance which is here complained of to force the defendant into one of the markets last above referred to, or into a market operated by the city, in order to create a monopoly,in favor of the grantee of such market, or to increase the revenue of such grantee or of the city. The answer to this is that the establishment of public markets and the prohibition of private markets are within the legislative discretion, and the exercise of such discretion cannot be inquired into by the courts, unless the lawmaker has exceeded his power, or fraud is imputed, or there is a manifest invasion of private right. * * * But the fact that all dealers in the commodities specified in the ordinance may be obliged to transact their business in the public markets is not the establishment of a monopoly, within the meaning either of the act in question or of the Constitution, since the markets are open to them all, upon the same terms, and the charges are regulated by law.”
 

 The feature of this ordinance that is most strenuously objected to and protested against by the learned counsel for the defendant is not the clause which forbids the selling of meat in the town outside of the public market, but is the clause which forbids the delivering, in the town, of meat sold outside of the town. It seems to be thought that the ordinance in that respect is given effect outside of the town. On the contrary, the ordinance does not purport to interfere with the selling of meat outside of the town. It merely forbids delivering in the town, meat that has not been exposed for sale in the public market, no matter where it was sold. The purpose is to make the ordinance effective, which it would not be if it did not deal with the delivering rather than the
 
 selling of
 
 meat. If a butcher goes from house to house, delivering meat from his cart to his customers, it is impossible to prevent his selling meat from the cart. Besides, it is not so much the selling as the delivering of meat that must be watched and subjected to sanitary inspection and regulation.
 

 The ordinance is not discriminative; for a nonresident of the town has the same right that a resident has to rent a stall in the public market.
 

 The decisions which we have cited dispose of every complaint that is made with regard to the constitutionality of the ordinance, except the complaint that the ordinance would compel a nonresident of the state — one of the Kansas City packers, as suggested — to rent a stall in the public market in St. Martinville and expose his meat for sale there, before he could deliver it to consumers in the town. There is no discrimination against the citizens of the other states in that respect. They have the same privilege that any citizen of St. Martinville has to rent a stall in the public market. And, as to the possibility of an interference with interstate commerce, it is too remote to be deemed serious. In Austin v. Tennessee, 179 U. S. 343, 21 S. Ct. 132, 45 L. Ed. 224, the court said:
 

 “We have had repeated occasion to hold, where ■ state legislation has been attacked as violative * * * of the power of Congress over interstate commerce * * * that, if the action of the state Legislature were a bona fide exercise of its police power, and dictated by a genuine regard for the preservation of the public health or safety, such legislation would be respected, though it might interfere indirectly with interstate commerce,” citing Lake Shore, etc., R. Co. v. Ohio, 173 U. S. 285, 19 Sup. Ct. Rep. 465, 43 L. Ed. 702; Palapsco Guano Co. v. North Carolina Board of Agriculture, 171 U. S. 345, 18 Sup. Ct. Rep. 862, 43 L. Ed. 191; Missouri, etc., R. Co. v. Haber, 169 U. S. 613, 18 Sup. Ct. Rep. 488, 42 L. Ed. 878; New York, etc., R. Co. v. New York, 165 U. S. 628, 17 Sup. Ct. Rep. 418, 41 L. Ed. 853; Illinois Central R. Co. v. Illinois, 163 U. S. 142, 16 Sup. Ct. Rep. 1096, 41 L. Ed. 107; Geer
 
 *273
 
 v. Connecticut, 161 TJ. S. 519, 16 Sup. Ct. Bep. 600, 40 B. Ed. 793; Gulf, etc., B. Co. v. Hefley, 158 Ü. S. 98, 15 Sup. Ct. Bep. 802, 39 L. Ed. 910; Covington, etc’., Bridge Co. v. Kentucky, 154 TJ. S. 204, 14 Sup. Ct. Bep. 1087, 38 L. Ed. 962; Leloup v. Mobile, 127 TJ. S. 640, 8 Sup. Ct. Bep. 1380, 32 L. Ed. 311; Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1, 8 Sup. Ct. Bep. 811, 31 L. Ed. 629; Bobbin v. Shelby County Taxing Dist., 120 TJ. S. 489, 7 Sup. Ct. Bep. 592, 30 L. Ed. 694; Geiger-Jones Co. v. Turner, 230 E. 233; Lanston Monotype Mach. Co. v. Curtis, 224 E. 403, 140 C. C. A. 89; Stoll v. Pacific Coast S. S. Co., 205 E. 169; Bogan v. Postal Tel., etc., Co., 157 E. 570.
 

 “To come within the rule, the interference with interstate commerce must be direct and substantial, and not merely incidental. The states may, as long as they do no more than, legitimately exercise their reserved police power, enact laws which will be valid, although they may incidentally affect interstate commerce. Bocal laws of the character mentioned have their source in the powers which the states reserved and never surrendered to Congress, of providing for the public health, the public morals and the public safety, and are not, within the meaning of the Constitution, and considering their own nature, regulations of interstate commerce.” 12 C. J. 13, citing Hendrick v. Maryland, 235 TJ. S. 610, 35 Sup. Ct. Bep. 140, 59 B. Ed. 385; Minnesota Bate Cases, 230 TJ. S. 352, 33 Sup. Ct. Bep. 729; 57 B. Ed. 1511, 48 B. B. A. (N. S.) 1151, Ann. Cas. 1916A, 18 (Bev. 184 F. 765); Standard Food Co. v. Wright, 225 TJ. S. 540, 32 Sup.'Ct. Bep. 784, 56 B. Ed. 1197; Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. Bep. 715, 56 B. Ed. 1182; Mondou v. New York, etc., B. Co., 223 U. S. 1, 32 Sup. Ct. Bep. 169, 56 B. Ed. 327, 38 B. B. A. (N. S.) 44; Chicago, etc., B. Co. v. Arkansas, 219 U. S. 453, 31 Sup. Ct. Bep. 275, 55 B. Ed. 290; New Mexico v. Denver, etc., B. Co., 203 TT. S. 38, 27 Sup. Ct. Bep. 1, 51 B. Ed. 78; Field v. Barber Asphalt Pav. Co., 194 TJ. S. 618, 24 Sup. Ct. Bep. 784, 48 B. Ed. 1142; Pennsylvania B. Co. v. Hughes, 191 TJ. S. 477, 24 Sup. Ct. Bep. 132, 48 B. Ed. 268; Caldwell v. North Carolina, 187 TJ. S. 622, 23 Sup. Ct. Bep. 229, 47 B. Ed. 336; Bouisville, etc., B. Co. v. Kentucky, 183 TJ. S. 503, 22 Sup. Ct. Bep. 95, 46 B. Ed. 298.”
 

 The judgment of the district court declaring the eighth section of this ordinance invalid is annulled, and it is ordered that the case be reinstated on the docket of the district court for further proceedings consistent with the foregoing opinion.