HAMLIN, Justice.
 

 The defendant was charged by bill of information with having committed the offense of wilfully and unlawfully selling building materials on a Sunday (November 25, 1962),
 
 [1]
 
 a violation of LSA-R.S. 51:194 (Act 273 of 1962) which recites:
 

 “Sunday sale of certain consumer goods prohibited; penalties; injunctive relief; exemptions
 

 “A. On the first day of the week, commonly designated as Sunday, it shall be unlawful for any person, whether at retail, wholesale or by auction, to sell, attempt to sell, offer to sell or engage in the business of selling, or require any employee to sell any clothing or wearing apparel; lumber or building supply materials; furniture; home or business or office furnishings, or any household, office or business appliances.
 

 “B. Whoever violates any provision of this Section shall be fined not more than one hundred dollars for the first offense. If it is shown upon the trial of a case involving a violation of this Section that the defendant once before has been convicted of this same offense, he shall, upon a second conviction and upon each subsequent conviction, be imprisoned for not more than six months or be fined not more than five hundred dollars, or both.
 

 “C. The purpose of this Section being to promote the health, recreation and welfare of the people of this state and to prevent unfair competition among persons, firms or business establishments, the operation of any business, whether by an individual, partner
 
 *824
 
 ship or corporation, in contravention of the provisions of this Section is declared to he a nuisance, and any person may apply to any court of competent jurisdiction for and may obtain an injunction restraining such violation.
 

 . “D. A sale of an item falling within the categories enumerated in Subsection A of this Section by persons not engaged in the business of selling such an item shall be exempt from the operation of this Section.
 

 “E. This Section does not apply to any sale or sales:
 

 “(1) for charitable purposes; or
 

 “(2) of items for funeral or burial purposes; of items sold as a part of or in conjunction with the sale of real property, or of drugs, medicines, medical or surgical supplies and appliances.”
 
 [2]
 

 The defendant filed the following motion to quash the bill of information:
 

 tt
 
 * * *
 

 “The Criminal Information herein is based upon LSA-R.S. 51:194(A), as
 
 *826
 
 adopted by La. Act 273, No. 1 of 1962. This subsection (A) is unconstitutional in that the terms ‘ * * * it shall be unlawful for any person, whether at retail, wholesale or by auction, to sell, attempt to sell, offer to sell or engage in the business of selling or require any employee to sell * * * lumber or building supply materials * * are too broad and indefinite to inform the defendant of the nature of the charge against him and whether or not his conduct constituted a violation of the subsection of the statute, and are broad and indefinite to such an extent that the defendant could not know with certainty when or whether his conduct was on the one side or the other side of the border line between that which is and that which is not denounced as an offense by the subsection of the statute.
 

 “The subsection, therefore, violates Article 1, Section 2, of the Louisiana Constitution [LSA], which provides that ‘No person shall be deprived of life, liberty or property, except by due process of law. * * * ’ It violates Article 1, Section 9, of the Louisiana Constitution which states that the accused ‘ * * * shall have the right to defend himself * * * ; ’ and Section 10 of the same article which provides that ‘In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him
 

 * *
 
 if>
 

 “Further, the subsection for the given reasons violates the 6th., and 14th., Amendments of the United States Constitution, in that the accused is not ‘ * * * informed of the nature and cause of the accusation * * *
 
 ’
 

 (6th Amendment) ; and, the action of the State would deprive the accused of liberty and property without due process of law, and the accused would be denied the equal protection of the laws (14th Amendment, Section 1.)”
 

 The defendant filed an amended motion to quash, wherein he averred that the information filed against him did not state an offense within the statute, LSA-R.S. 51 :- 194(A), under which the charges were made.
 

 The trial court sustained the motion to-quash the bill of information on the ground that Act 273 of 1962 (LSA-R.S. 51:194) is unconstitutional insofar as the term “Building Supply Materials” is concerned; it set aside the bill of information and discharged the defendant. The court denied the supplemental and amended motion to quash the bill of information. In its ruling with.
 
 *828
 
 respect to the unconstitutionality of the instant statute, the court stated in part:
 

 “In adopting Act 273 of 1962 (LSA-R.S. 51:194), the Legislature did not give a specific meaning to the term
 
 ‘building supply materials.’
 

 “The term has no defined or commonly accepted meaning in law, nor is same descriptive of any object as such. It is descriptive only by reason of the use to which it is put. No object can be specifically classified as unequivocally and solely a
 
 ‘building supply material.’
 
 Obviously this accounts for a lack of a formal definition.
 

 “As the term
 
 ‘building supply materials’
 
 only has a relationship to the use made of objects, a consideration of the enumerable purposes for which same might be used, makes it unsafe for a court, much less the average layman, to determine the meaning, intent, limitations, and application of the term
 
 ‘building supply materials,’
 
 as same appears in Act 273 of 1962 (LSA-R.S. 51:194).
 

 “The Court is of the opinion that insofar as the term
 
 ‘building supply materials’
 
 is concerned, that the statute under attack is unconstitutional, null and void for the reasons hereinabove set out.
 

 “Having determined that Act 273 of 1962 (LSA-R.S. 51:194) is unconstitutional in part, it would appear that no necessity exists for the Court’s passing on defendant’s supplemental motion to quash. However, as defendant has moved to quash on the further ground that the bill of information
 
 ‘does not state an offense within the statute,’
 
 the court prefers to pass upon all issues presented by the pleadings.
 

 “The Court is of the opinion, that if Act 273 of 1962 (LSA-R.S. 51:194) is constitutional the Court having held to the contrary, the bill of information filed herein does state an offense within the statute.”
 

 The State has appealed to this Court from the above judgment and asserts herein that:
 

 “1. The term ‘building materials’ or ‘building supply materials,’ has a well known, precisely defined meaning, and therefore it was not necessary for the Legislature to define this term in R.S. 51:194.
 

 “2. The Louisiana Legislature has defined the term ‘building materials’.
 

 “3. Even if R.S. 51:194 is unconstitutionally vague insofar as the term ‘building supply materials’ is concerned the bill of information herein should not have been quashed.”
 

 Initially, it is pertinent to remark that Sunday Laws per se are enacted as legitimate exercises of the police power of
 
 *830
 
 the State and are not violative of any inhibition contained in either the Constitution of the United States or the Constitution of the State of Louisiana. State ex rel. Walker v. Judge of Section A., 39 La.Ann. 132, 1 So. 437.
 

 “It is a well-established principle of constitutional law that the Legislature may determine what are the proper occasions and subjects for the exercise of police power, and it is not within the province of the courts to decide as to the expediency of a measure enacted thereunder. * * * The courts will interfere only when the restrictions imposed have no real or substantial relation to the public interest in the matter regulated. * * *” State v. Trahan, 214 La. 100, 36 So.2d 652. See, Art. XIX, Sec. 18, La.Const. of 1921.
 

 “Throughout this century and longer, both rhe federal and state governments have oriented their activities very largely toward improvement of the health, safety, recreation and general well-being of our citizens. Numerous laws affecting public health, safety factors in industry, laws affecting hours and conditions of labor of women and children, week-end diversion at parks and beaches, and cultural activities of various kinds, now point the way toward the good life for all. Sunday Closing Laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. * * * ” McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393.
 

 Despite the avowed purposes of Sunday Laws, we are fully cognizant of the fact that in order for such laws to be violated and their violation constitute an offense against the State, the laws themselves must be valid and constitutional.
 

 “Hence, it is sufficient to say that a criminal statute, in order to be valid and enforceable, must define the offense so specifically and accurately that any reader having ordinary intelligence will know when or where his conduct is on the one side or the other of the borderline between that which is and that which is not denounced as an offense against the law. * * * ” State v. Murtes, 232 La. 486, 94 So.2d 446.
 

 “The right to measure one’s conduct by a reasonably clear standard permeates our system of criminal justice. The posting of criminal laws high on a semantic wall beyond the vision of the
 
 *832
 
 people cannot be given judicial sanction.” State v. Robertson, 241 La. 249, 128 So.2d 646.
 

 “It is well settled that the determination or definition of acts which are punishable as crimes is a purely legislative function which cannot be delegated to, or exercised by, the courts. For, as pointed out in United States v. Reese, supra [92 U.S. 214, 221, 23 L.Ed. 563], it would ‘certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.’ ” State v. Truby, 211 La. 178, 29 So.2d 758, 765. See, State v. Whitlock, 193 La. 1044, 192 So. 697; State v. Gaster, 45 La.Ann. 636, 12 So. 739; State v. Vanicor, 239 La. 357, 118 So.2d 438; State v. Vallery, 212 La. 1095, 34 So.2d 329.
 

 Defendant contends that the application 'of LSA-R.S. 51:194 to the selling of hardware stock by him, a co-proprietor of Harry’s Hardware in New Orleans, must depend upon the meaning of the phrase “Building Supply Materials” in the statute, .since no other clauses can possibly apply to the selling of hardware stock. He argues that the statute does not define the meaning •of “Building Supply Materials”, and that the terms have no well defined nor commonly accepted meaning.
 

 It is true that LSA-R.S. 51:194, which appears in the Revised Statutes under Title 51, Trade and Commerce, merely prohibits the sale of “Lumber or Building Supply Materials” on Sunday and does not detail what such “Building Supply Materials” are; but, we find that despite the absence of a detailed specification, the general phraseology has a fixed, definite, or commonly understood meaning and application. State v. Robertson, 241 La. 249, 128 So.2d 646, 648. An examination of the jurisprudence and other statutory law, which we are permitted to consider (State v. De Hart, 109 La. 570, 33 So. 605 ; State v. Viator, 229 La. 882, 87 So.2d 115; State v. Guimbellot, 232 La. 1043, 95 So.2d 650; State v. Hightower, 238 La. 876, 116 So.2d 699; Barnett v. Sewerage & Water Board of New Orleans, La.App., 51 So.2d 634; State v. Pete, 206 La. 1078, 20 So.2d 368; Marino v. City of Baton Rouge, La.App., 61 So.2d 588), convinces us that our finding, supra, is correct. We find:
 

 “ ‘Building Material’: Material used in construction work. Wood Preserving Corporation v. State Tax Commission, 235 Ala. 438, 179 So. 254, 255. Material essential to erection or construction of house or other structure. Mutual Lumber Co. v. Sheppard, Tex.Civ.App., 173 S.W.2d 494, 497, 498, 500.” Black’s Law Dictionary, 4th Ed., 1951, p. 245.
 

 
 *834
 
 “ ‘Lumber and other building materials’ shall be deemed to be lumber, millwork of all types, plywood, gypsum and plaster products, flooring, both of wood, tile, rubber and asphalt; siding and roofing whether of wood, asbestos, asphalt or gypsum composition, all plumbing and electrical fixtures (not including electrical appliances) insulation whether of loose or rigid type and such other building products used in the construction of residential, commercial, recreational, educational and industrial buildings or in the remodelling, repair or enlargement of such buildings.” LSA-R.S. 47:363(3).
 

 “ * * * The material used in building a railroad, a bridge, a telephone or telegraph line, a dam or fence, is building material. In fact the term ‘building material’ as employed in the exception is sufficiently comprehensive to include material of all kinds used in construction work. * * * ” Wood Preserving Corporation v. State Tax Commission, 235 Ala. 438, 179 So. 254.
 

 “The words ‘building materials’ as used in the statute were clearly intended to be used in their ordinary acceptation or signification. They are not technical words. The meaning of the words ‘building materials’ as employed in the statute is well known to the' businesses which sell them as well as to the purchasers and users of them. * * * ” Mutual Lumber Co. v. Sheppard, Tex. Civ.App., 173 S.W.2d 494.
 

 “Building material.
 
 Such as is essential for building any kind of house. The term has been held to include lumber, and it has been said that ‘building materials’ normally consist not only of lumber, bricks, stone, and iron, but of paints, varnishes, and many other substances used in building construction, and improvements; but not to include dirt excavated for the foundation of a building.” 12 C.J.S. Building, p. 389.
 

 The Commission continues:
 

 “ ‘Building materials, as the term implies, embraces all those commodities which go into the erection of all types of buildings. It includes those materials necessary to complete the building, that is, those articles which are to become a permanent part thereof. It does not include those articles which are not a part of the building, such as furniture, 'furnishings, portable fans, and drinking fountains, assembled refrigerators, and the like. It does not embrace mechanics’ tools or equipment: used for the construction of the build.ing, such as paint brushes, but does include paint. * * * ’ ” Ace Lines, Inc. v. United States, D.C.Iowa, 197 F.Supp. 591.
 

 
 *836
 
 It is'a'matter'of' common knowledge that “Building Supply ’Materials” áre such materials as are iised in the construction of a building; this general phraseology has a fixed, definite, and commonly understood meaning and application. It is also a matter of common knowledge that lumber, nails, screen wire, and paint are employed in the" construction of a building. In corroboration of this common knowledge, the law makers and the courts, supra, have had occasion in many instances to refer to lumber and paint as “Building Supply Materials”, and it leaps to .the mind that nails and screen wire are also “Building Supply Materials.” It was not necessary, in order to satisfy the constitutional requirements set forth, supra, that a detailed specification follow the phrase “Lumber or Building Supply Materials” recited in LSA-R.S. 51:194.
 

 “ * * * While a statute must be sufficiently specific to apprize persons affected by it of its requirements and .of the elements constituting any criminal offense, nevertheless, the law does not require the impossible or even, the impracticable. Absolute detailed certainty with the precision of a mathematical formula, is not exacted. Some leeway may be left to the discretion of the courts and administrative agencies in interpreting and enforcing a statute or regulation, even if it has a criminal aspect. It is sufficient if members of the public are' placed ‘on notice, as to what i's .required -or prohibited,’ and what would be deemed a criminal violation.” Atwood’s Transport Lines, Inc. v. United States, D.C.D.C., 211 F.Supp. 168, affirmed, 373 U.S. 377, 83 S.Ct. 1312, 10 L.Ed.2d 420.
 

 The Legislature is not required to do the impossible or even the impracticable, and absolute detailed certainty with the precision of a mathematical formula is not exacted of the lawmaker. Therefore, it was not required that the Legislature enumerate in LSA-R.S. 51:194 the specific uses, to which “Building Supply Materials” would have to be put in order to constitute such articles “Building Supply Materials”; neither was it necessary that the Legislature set forth quantity or volume as a criteria for the violation of the Statute insofar as “Building Supply Materials” are concerned. The Statute sufficiently apprizes the seller as to what he is prohibited from selling on Sunday.
 

 In discussing the history of the instant Statute in brief, counsel for defendant urges that “hardware” was included in a preliminary draft thereof; it is contended that the omission of the term “hardware” from said Statute makes it vague. The simple answer to counsel’s contention is that defendant is charged with having sold “Building Supply Materials” on a Sunday.
 

 
 *838
 
 “It is true that a statute attacked as vague must initially be examined ‘on its face,’ but it does not follow that a readily discernible dividing line can always be drawn, with statutes falling neatly into one of the two categories of ‘valid’ or ‘invalid’ solely on the basis of such an examination.
 

 «* * *
 

 “ ‘The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases * * *. [A] limiting construction could be given to the statute by the court responsible for its construction if an application of doubtful constitutionality were * * * presented. We might add that application of this rule frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.’ United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 [529] (1960).
 

 “The strong presumptive validity that attaches to an Act of Congress [Act of the Legislature] has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. * * *
 

 “Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. * * * In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. * * * ” United States v. National Dairy Prod. Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561, and authorities therein cited and quoted.
 

 We conclude that Act 273 of 1962 (LSA-R.S. 51:194) is constitutional insofar as the term “Building Supply Materials” is concerned.
 

 Because of our findings set forth above, we do not feel that it is incumbent upon us to pass on the third contention advanced by the State.
 

 The trial judge held that the bill of information herein filed does state an offense within the statute; the sufficiency of the bill of information is not presently before us, and the trial judge’s ruling on the sufficiency of the bill of information itself can be reviewed in the event of a conviction.
 

 For the reasons assigned, the judgment of the trial court sustaining the motion to quash the instant bill of information on the
 
 *840
 
 ground that Act 273 of 1962 (LSA-R.S. 51:194) is unconstitutional insofar as the term “Building Supply Materials” is concerned is reversed and set aside. It is now ordered that the cause be remanded for trial.
 

 [1]
 

 . “ * * * on the twenty-fifth day of November in the year of our Lord, one thousand nine hundred and sixty two with force and arms in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal. District Court for the Parish of Orleans, did wilfully and unlawfully sell building materials, to-wit: roofing nails, white paint and screen wire on a Sunday, contrary to the form of the Statute of the State of Louisiana in such case made and provided and against the peace and dignity of the same.”
 

 [2]
 

 . The basic Sunday Laws of this State are set out in LSA-R.S. 51:191-51:193, which recite:
 

 “Places of business to be closed; penalty
 

 “All stores, shops, saloons, and all places of public business, licensed under the law of Louisiana or under any parochial or municipal law and all plantation stores, shall be closed at twelve o’clock on Saturday nights, and remain closed continuously for twenty-four hours, during which time no proprietor thereof shall give, trade, barter, exchange or sell any of the stock or any article of merchandise kept in his establishment.
 

 “Whoever violates this Section shall be fined not less than twenty-five dollars nor more than two hundred and fifty dollars, or imprisoned for not less than ten days nor more than thirty days, or both for each offense.” LSA-R.S. 51:191.
 

 “Exemptions
 

 “The provisions of R.S. 51:191 shall not apply to newsdealers, the sale of ice, watering places and public parks, places of resort for recreation and health, newspaper offices, keepers of soda fountains, printing offices, book stores, drug stores,, apothecary shops, undertaker shops, public and private markets, bakeries, dairies, livery stables, railroads, whether steam or horse, hotels, boarding houses, steamboats and other vessels, warehouses for receiving and forwarding freights, restaurants, telegraph offices and theatres, or any place of amusement, unless intoxicating liquors are sold in the premises. Stores may be opened for the purpose of selling anything necessary in sickness and for burial purposes.
 

 “Hotels or boarding houses may sell wine for table use on Sundays. No alcoholic, vinous or malt liquors shall be given, traded or bartered or sold or delivered in any public place on Sundays, except when administered or prescribed by a practicing physician in the discharge of his professional duties. In which ease the physicians administering the intoxicating liquors may charge therefor.” LSA-R.S. 51:192.
 

 “Barber shops to be closed; penalty
 

 “No person shall operate on Sunday a barber shop, tonsorial parlor, or any other place of business where the trades of cutting and clipping hair, shaving or massaging is carried on.
 

 
 *826
 
 “Whoever violates this Section shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned for not less than thirty days nor more than sixty days, or both.” LSA-R.S. 51:193.