462 So.2d 616 (1985)
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General
v.
K-MART CORPORATION; K-Mart Discount Store No. 7386, 5990 Lapalco Boulevard, Marrero, Louisiana 70072; K-Mart Discount Store No. 7088, 1615 Westbank Expressway, Harvey, Louisiana 70058; K-Mart Discount Store No. 3423, 1400 South Clearview Parkway, Metairie, Louisiana 70001; K-Mart Discount Store No. 7223, 7000 Veterans Memorial Boulevard, Metairie, Louisiana 70003.
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General
v.
GAYLORD NATIONAL CORPORATION; Gaylord's Discount Department Store At 100 North Labarre Road, Metairie, Louisiana; Gaylord's Discount Department Store At 900 Manhatten Boulevard, Harvey, Louisiana; Gaylord's Discount Department Store At 2024 Belle Chasse Highway, Gretna, Louisiana; Gaylord's Discount Department Store At 755 Veterans Memorial Boulevard (Corner of Martin Behrman Street), Metairie, Louisiana.
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General
v.
HOME DEPOT, INC. and the Home Depot Store At 62 Westbank Expressway, Gretna, Louisiana.
Nos. 84-CA-1565 to 1567.
Supreme Court of Louisiana.
January 14, 1985.
Rehearing Denied March 7, 1985.
*617 William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., John R. Flowers, Jr., Barbara Rutledge, Kenneth C. Fonte, Louis M. Jones, Maureen Feran Freedland, Asst. Attys. Gen., for plaintiff-appellant in all cases.
Harvey C. Koch, Joe M. Inabnett, Gary J. Rouse, Margaret M. Groome, Harvey C. Koch and Associates, New Orleans for defendants-appellees in 84-CA-1565.
Terry J. Freiberger, Montgomery, Barnett, Brown & Read, New Orleans, for defendants-appellees in 84-CA-1566.
Robert E. Barkley, Jr., Francis R. White, III, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for defendant-appellee in 84-CA-1567.
DIXON, Chief Justice.
In these three consolidated cases, the State of Louisiana, through the attorney general, appeals from the district court ruling decreeing the Sunday Closing Laws (R.S. 51:191-94) unconstitutional.
The state filed a petition for injunction against each of the three appellees hereinK-Mart Corporation, Gaylord National Corporation and Home Depot, Inc. The petitions alleged that the stores were in violation of R.S. 51:194 by selling on Sunday certain merchandise prohibited by the *618 statute; the petitions prayed that injunctions be issued enjoining the defendants from engaging in the sale of merchandise on Sunday.
The three cases were consolidated and set for a hearing on a preliminary injunction. Prior to the hearing, however, Gaylord and Home Depot filed petitions for removal to the United States District Court for the Eastern District of Louisiana. The state district court, proceeding in the K-Mart case, then granted the state's request for a preliminary injunction; but at the trial of the permanent injunction, the trial court vacated its injunctive order and rendered judgment in favor of K-Mart declaring R.S. 51:191-94 unconstitutional.
Meanwhile, the United States District Court granted the state's motion for remand of the Gaylord and Home Depot cases. Subsequent to remand, the state district court handed down a similar ruling in the Gaylord and Home Depot cases declaring the Sunday laws unconstitutional. The three cases are on direct appeal to this court pursuant to Louisiana Constitution art. 5, § 5(D)(1).
The Sunday closing laws are compiled from old statutes and have withstood constitutional attack many times. State ex rel. Walker v. Judge of Section A, 39 La. Ann. 132, 1 So. 437 (1887) (Act No. 18 of 1886 does not violate the equal protection clause nor infringe upon the right to religious freedom); State v. Trahan, 214 La. 100, 36 So.2d 652 (1948) (exception permitting hotel and boarding house restaurants to sell wine with meals on Sunday does not constitute unjust discrimination against ordinary restaurants); State v. Wiener, 245 La. 889, 161 So.2d 755 (1964) ("wearing apparel" is not unconstitutionally vague); State v. Deutch, 245 La. 819, 161 So.2d 730 (1964) ("building supply materials" not unconstitutionally vague); State v. Scallon, 374 So.2d 1232 (La.1979) (Sunday closing law not a denial of due process or equal protection); Harry's Hardware, Inc. v. Parsons, 410 So.2d 735 (La.1982) (Sunday closing law not a denial of due process or equal protection).
R.S. 51:191 (Act 18 of 1886) declares that all stores and places of public business shall be closed on Sunday and supplies criminal sanctions for non-compliance; that section has not been amended. Section 192 contains the twenty-four exemptions listed in Act 18 of 1886, plus exemptions for art galleries (added in 1979) and the World's Fair (added in 1983). The exemptions range from "places of resort for recreation and health" to drug stores, livery stables, markets, hotels, book stores, restaurants, etc.
R.S. 51:193 (Act 146 of 1918) requires the Sunday closing of barber shops.
R.S. 51:194 was first enacted by Act 273 of 1962, and forbids the sale, by anyone engaged in the business of selling, of the following items: clothing or wearing apparel, lumber or building supply materials, furniture, home business and office furnishings, household, office, or business appliances and new or used automobiles or trucks. In 1972, 1977 and 1983, exemptions from the prohibition were added for sales in connection with mobile homes or real property, sales in the Vieux Carre, sales in "Catfish Town" in Baton Rouge and sales at the World's Fair. Act 273, unlike the previous act, provides for injunctive relief as well as criminal penalties.
Sunday closing laws are not, in themselves, unconstitutional. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The Fourteenth Amendment gives substantial latitude to the individual states in promulgating laws through their police power. State laws may be constitutional even if they create classifications of the affected constituency and result in uneven treatment to the different statutory classes. The legislature's wisdom in enacting such discriminatory laws will not be overridden if "any set of facts reasonably may be conceived to justify [the laws]." McGowan v. Maryland, supra, at 425-26, 81 S.Ct. at 1104-05.
Such justification is usually determined by an analysis of the law's purpose and of the means by which the purpose is *619 carried out. If the purpose or effect of the statute is to discriminate against so-called suspect classifications, such as race or alienage, or involves a constitutionally protected area such as freedom of expression, the laws will be strictly scrutinized. If such suspect classifications are not involved, then the statutory means need only be rationally related to a legitimate statutory end.
In the words of the United States Supreme Court:
"When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. See, e.g., Lehnhausen v. Lake Shore Auto Parts Co. 410 U.S. 356, 93 S.Ct. 1001 [35 L.Ed.2d 351] (1973). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step, Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717 [16 L.Ed.2d 828] (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. See, e.g., Williamson v. Lee Optical Co. 348 U.S. 483, 488-489, 75 S.Ct. 461 [464-465, 99 L.Ed. 563] (1955). In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines, see, e.g., Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, 72 S.Ct. 405 [407, 96 L.Ed. 469] (1952); in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. See, e.g., Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028 [1032, 10 L.Ed.2d 93] 95 A.L.R.2d 1347 (1963)." City of New Orleans v. Dukes, 427 U.S. 297, 303-04, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976). (Emphasis added).
In the instant case the law's stated purpose is to promote the health, safety and welfare of the citizens of this state and to inhibit unfair competition among the various businesses in the community. (Section 194(C)). There is no indication that the statute purports to do anything other than provide a day of rest for the state population employed in "places of public business." R.S. 51:191.
The trial court found that although such a statute might have been, in the Nineteenth Century, a necessary or rational means for providing a day of rest for workers, the statute now fails in its goal, since labor union rules and federal wage and hour laws prevent employees from working seven days per week. It is unnecessary to question the accuracy of the trial court's conclusions, for even if they are correct, a state legislature still has the prerogative to enact laws to ensure the health of its constituency in spite of union rules and federal laws and regulations designed to achieve the same end.
The trial court also found that the law's second purpose (preventing unfair competition) is thwarted by the numerous statutory exemptions to the statute. The court further found that the classifications and exemptions actually promote unfair competition since the scheme leads to situations where two stores, each selling the same merchandise, are treated differentlyone is allowed to open while one is not.
This contention has already been disposed of by this court as containing no merit. In Harry's Hardware, Inc. v. Parsons, supra, at 737-38, it was stated:

*620 "The exemptions created by the statute are those that the legislature deemed necessary to safely provide for the welfare of the public while mandating a forced closing of most businesses. Drug stores and public markets are exempted to allow the sale of medicine and food on Sunday. Funeral homes may remain open as the inevitability of death cannot be averted on Sunday. The exemptions for theatres, book stores and art galleries are consistent with the intent to provide a day of rest and recreation. Hotels are exempted to provide a place of residence for out-of-town visitors.
Each of the exemptions provided by the Sunday Closing Law is rationally related to the state's objective in enacting such a statute. The discrimination suffered by the plaintiff's hardware stores is a by-product of a rational legislative scheme whereby the leisure and recreation of the populace is fostered without concomitant deprivation of access to essentials such as food and medicine. This discrimination does not become invidious merely because those drug and grocery stores which are allowed to remain open may also sell non-food and non-drug items. Although the plaintiff demonstrated substantial similarity between the inventory of its hardware outlets and the inventories of present day drug and grocery stores, we do not find that this similarity renders any statutory distinction between hardware stores and food or drug stores arbitrary and unreasonable. While inventories may overlap, drug stores remain primarily retailers of pharmaceutical products and grocery stores remain primarily retailers of food items. To provide public access to precisely these essentials, rather than hardware or other non-food or non-drug items, drug and grocery stores may remain open on Sunday. We cannot say the legislature acted unreasonably or arbitrarily in treating food and drug stores in a different manner than hardware stores under the Sunday Closing Law."
The trial court also found that the Sunday laws are selectively enforced throughout the state and thus constitute a denial of equal protection. The court cited the fact that the attorney general's office does not initiate enforcement proceedings absent a citizen complaint. The trial judge also noted that numerous drug stores allowed to remain open on Sunday under § 192 advertise products prohibited for sale on Sunday by § 194 and yet no steps are taken to prosecute those stores.
A concept imbedded in our system of law enforcement is prosecutorial discretion. Prosecuting agencies have broad powers in deciding whether to institute a prosecution in a given case. However, as with any governmental power delegated to an agency or official, this discretion must not be used arbitrarily, capriciously, or maliciously, but rather must be used to further the ends of justice.
In the words of the United States Supreme Court, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." In order to find such a violation, it must be shown that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). See also United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).
Since there was no showing made by appellees that the instant prosecution was based upon such an unjustifiable standard, the trial court's ruling on this ground must be reversed.
The trial court's final ground for holding § 194 unconstitutional was that the statute is vague and, as such, fails to give reasonable notice of the prohibited conduct. In its reasons for judgment, the trial court stressed the evidence adduced at trial that even experienced law enforcement officials were unable to determine the particular items proscribed by the statute.
*621 Since § 194 provides for criminal as well as civil sanctions, the statutory language must pass a strict vagueness test. The statute "must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972); for "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).
However, these strict standards are tempered by the fact that the regulations under scrutiny are economic in nature, directed not to the general populace but rather to individuals in the business community.
"... Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process...." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).
In any case, the enumerations in question do not pose a significant problem even for the non-sophisticate. Two of the categories have already survived vagueness challenges in this court. See State v. Deutch, supra, which held that the term "building supply materials" was not vague; and State v. Wiener, supra, in which the term "wearing apparel" was challenged.
As for the remaining categories, each is relatively easy to define with the help of a dictionary and commonsense. In cases where a certain item may straddle the fence and be susceptible of contrary interpretations, the proper test to be applied is derived from the overall purpose of the statutory scheme: that is, is the product necessary for the daily physical, intellectual, or emotional subsistence of a human being living a contemporary lifestyle such as, for example, foodstuffs, medication, newspapers or periodicals, hotels and restaurants; or is the item of such a nature that it can be bought at a later date with no harm to the physical, mental or emotional well being of the individual, such as furniture and appliances.
Accordingly, the ruling of the district court declaring R.S. 51:191-94 unconstitutional is reversed. The cases are remanded to the district court for further proceedings consistent with this opinion, at the cost of defendants.
CALOGERO and LEMMON, JJ., dissent and assign reasons.
WATSON, J., dissents for reasons assigned in dissenting opinion in Harry's Ace Hardware, Inc. v. Parsons, 410 So.2d 735 (La., 1982).
CALOGERO, Justice, dissenting.
I dissent from the majority opinion, which holds the entire Sunday Closing Law statutory scheme (La.R.S. 51:191-94) constitutional.
The enactment of legislation establishing a uniform day of rest on which business activities are restricted is not in itself such an unreasonable exercise of the police power as to require a finding that any such statutory scheme is per se unconstitutional. However, the statutory scheme must not create arbitrary distinctions, and it must be rationally related to the state purpose in enacting it. Unfortunately, our Sunday Closing Laws, as a whole, fail on both counts, that is, they create 1) arbitrary distinctions that 2) lack any rational relationship to the state purpose in enacting them.
The stated purpose of the law is to promote the health, safety and welfare of the citizens of this state and to inhibit unfair competition among the various businesses in the community. Generally, La.R.S. 51:191-92 regulate which businesses can open. Then, La.R.S. 51:194 regulates what *622 can be sold in those which are permitted to open. When these provisions are considered together, they discriminate against certain merchants (requiring them to remain closed), which sell the same items as other merchants who are allowed to open. If anything, this fosters rather than inhibits unfair competition among the various businesses.[1]
Therefore, at the very least, in my view, for the Sunday Closing Laws to survive the constitutional attack at all, it can only survive insofar as it limits what can be sold at all (although even that provision, La.R.S. 51:194, is dangerously vague and requires immediate legislative attention) and not insofar as it regulates, under La.R.S. 191-92, which merchants can open. See Harry's Hardware, Inc. v. Parsons, 410 So.2d 735 (La.1982), Calogero, J., dissenting. Accordingly, I dissent.
LEMMON, Justice, dissenting.
Inasmuch as this action seeks to enjoin the Sunday sale of articles prohibited by La.R.S. 51:194, the issues are entirely different from those presented in Harry's Hardware, Inc. v. Parsons, 410 So.2d 735 (La.1982), which sought to declare unconstitutional the entire Sunday closing law scheme contained in La.R.S. 51:191 et seq.
I dissented in the Harry's Hardware case without assigning reasons. I concurred in the conclusion that Section 191 (requiring the closing of every place of public business on Sundays) and Section 192 (providing exceptions to the general closing requirement for those businesses related to medical, recreational, amusement or sustenance needs) established a rational (although outdated) scheme for providing a uniform day of rest.[1]McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). I parted company with the majority, however, when they concluded that the businesses permitted by Section 192 to remain open on Sundays could sell any article not prohibited by Section 194, regardless of whether those articles were related to the purpose for the exemption listed in Section 192. I would have permitted those businesses which were exempted by Section 192 from the general closing requirement to remain open on Sundays, but would have restricted their sales to items related to the purpose of the exemption.[2]
In my opinion, such a restriction was necessary to sustain the constitutionality of the statute, and the majority's broader interpretation rendered the statute violative of the constitutional guarantee of equal protection of the law, since exempted stores and non-exempted stores were treated radically different as to the articles of merchandise not related to the exemptions provided by Section 192.
The present case concerns only the constitutionality of Section 194, which prohibited the sale of certain items of merchandise on Sunday by "any person", with certain exceptions. Several additional exceptions have been added in recent years.
In my opinion Section 194 is unconstitutional because Subsection A is too vague to provide reasonable notice of the prohibited conduct. Although this is a civil action, Section 194 is a criminal statute which subjects violators to possible jail terms. A criminal law must be sufficiently clear to provide a person of ordinary intelligence a reasonable opportunity to know what conduct *623 is prohibited in order that he may conform his conduct thereto. State v. Gisclair, 363 So.2d 696 (La.1978). Since the meaning of a criminal statute must be clear to the average citizen, a criminal statute which is so vague that men of ordinary intelligence must guess at its meaning violates the notice requirement of due process. State v. Stilley, 416 So.2d 928 (La.1982). Moreover, vague criminal laws lead to arbitrary and discriminatory enforcement by the authorities charged with the duty of carrying out the laws.
Section 194 A prohibits the sale on Sunday of six general categories of merchandise. The evidence established that store managers, attorneys, and law enforcement personnel candidly admit that while many items of merchandise clearly fall into or outside of the six general categories, hundreds of other articles cannot be clearly defined as either prohibited or permitted. Indeed, the statute raises as many questions as it answers. Moreover, the lack of a scienter requirement in the statute aggravates the vagueness problem from the standpoint of enforcement as a criminal law.
Section 194, when considered along with Sections 191 and 192 as part of the overall scheme for prohibition of sales and services on Sundays, presents other problems. Sections 191 and 192 were enacted in 1886 to provide a rational scheme for affording a uniform day of rest. As indicated earlier, these two statutes present no significant constitutional or practical problems, except for the need for the updating of exemptions. However, the Legislature, in enacting Section 194 in 1962, took an entirely different approach to the regulation of business on Sunday by prohibiting the Sunday sale only of certain items. In adopting this entirely new approach, the Legislature did not expressly repeal Section 191's general requirement of closing on Sundays (which would not have been a popular legislative action in many parts of the state). However, the adoption of the totally new approach in 1962 and the subsequent amendments to Section 194 convince me that the Legislature impliedly repealed Sections 191 and 192.
For example, Section 191 (if that section is still viable) would require a furniture store to remain closed on Sundays, even if that store is located in the Vieux Carre', because Section 194 E exempts sales of furniture on Sundays in the Vieux Carre' only from the prohibitory provisions of "this Section" (which prohibit generally the sale of furniture on Sundays by any person). Nothing in Section 194 exempts furniture stores in the Vieux Carre' from Section 191's requirement that all places of public business (except those expressly exempted by Section 192) close on Sundays. Likewise, a clothing store located in Catfish Town would be required by Section 191 to close on Sundays, even though Section 194 E exempts retail outlets in that area from Section 194 A's prohibition against the Sunday sale of wearing apparel. It would be absurd to conclude that the Legislature went to such lengths to provide in Section 194 E and its amendments for very detailed exemptions from the prohibitions of Section 194 A, while at the same time leaving the closing requirement of Section 191 in full effect.[3] The far more logical conclusion is that the Legislature intended Section 194 as a new and complete regulation of Sunday closing laws which replaced the earlier outdated regulatory scheme. Indeed, as illustrated above, it was essential to the effectiveness of the exemptions contained in Section 194 E and its amendments that Section 191 did not remain in effect.
Finally, the title of Acts 1962 No. 273 (which adopted Section 194) suggests an intent to exhaustively regulate "with respect to commodities, products and other items of consumer goods which shall not be sold or offered for sale on the first day of *624 the week, commonly designated as Sunday", and the act itself was obviously designed as a total revision of the outmoded 76-year old Sunday sales regulations then in existence. See Pick's Auto Parts No. 2, Inc. v. Hodge's Auto Parts, 334 So.2d 547 (La.App. 4th Cir.1976). The fact that the 1886 statute could not be applied satisfactorily to merchandising methods of the 1960s presumably led to the comprehensive revision of the Sunday laws.[4] Perhaps the Legislature, in revising the outdated laws, would have been wiser to retain Section 191's requirement that all places of business be closed and to restrict Sunday sales by the places of business exempted by Section 192 to those items related to the purpose of the exemptions. However, the Legislature chose instead to prohibit the Sunday sale of specified items by any persons and to provide particular exemptions from that universal prohibition. That choice indicates an intent to discard the former regulations, especially since the continued applicability of Section 191 would destroy the effectiveness of the exemptions in the new legislation.
I therefore conclude that Sections 191 and 192 did not survive the 1962 enactment of the comprehensive Section 194 and are no longer enforceable, having been impliedly repealed.
NOTES
[1] La.R.S. 51:191-92 date back to 1886. The distinctions drawn then, between which stores could open consistent with the state purpose of promoting the health, safety and welfare of the citizens and which could not, allowing drug stores and food stores to open, had a rational basis. However, today, in the age of the modern super stores which might be labeled "drug stores" but sell everything from clothing to hardware, those distinctions no longer retain that rational relationship to the state purpose supporting the law.
[1] Section 192's exemptions, which included livery stables, watering places, horse railroads and sales of ice, obviously needed updating.
[2] For example, I would have permitted a drugstore to remain open on Sunday, but would have restricted the sales to drugs, medicines, and other items for medical and health care.
[3] Admittedly, the Legislature did exempt sales at the Louisiana World Exposition from the prohibitions of both Sections 191 and 194. However, that was a special exemption of limited duration and applicability which should not be determinative of general legislative intent regarding Sunday sales.
[4] By the 1960s, drug stores were selling a greater variety of merchandise than did the general stores of the 1880s.