LABORDE, Judge.
Ordinance Number 1 of 1984 of the Vernon Parish Police Jury regulates and taxes retailers of Vernon Parish with no fixed place of business. Mr. Charles Forgette, plaintiff-appellant, asserts that the entire ordinance fails to achieve any legitimate *239 governmental purpose, and that this court should therefore declare the ordinance to be unconstitutional and unenforceable. The court below upheld all but three subsections of the ordinance. The Vernon Parish Police Jury did not appeal the judgment; therefore, the judgment is final as to the three subsections held unconstitutional. We affirm.
The trial judge adeptly articulated his reasons for judgment. We adopt the portion of his reasons reproduced below as our own.
“The Vernon Parish Police Jury adopted Ordinance No. 1 of 1984 ‘pertaining to retailers with no fixed place of business by providing for an annual license, for inspection fees, surety bonds and for service of process, by providing for regulation of sales and location of sales and by otherwise providing with respect thereto.’
“The ordinance in question:
(a) Defines those to whom it applies;
(b) Provides for graduated occupational license tax in the minimum amount of $10.00;
(c) Fixes the maximum term of a license at one year and provides that such licensees are required to move to a different location at least 1000 feet from the prior location after each two days of business;
(d) Imposes an inspection or examination fee of $300.00 per vehicle, stand or location in addition to the occupational license tax;
(e) Requires the posting of a $2,000.00 surety bond with the Vernon Parish Police Jury as protection against noncompliance and the satisfaction of judgments rendered as a result of misrepresentations or deceptions;
(f) Requires each licensee to disignate [sic] the Secretary of the Vernon Parish Police Jury as its agent for the service of process;
(g) Requires each licensee to give the Vernon Parish Police Jury a list of sites from which it or he intends to sell products during a 30-day period;
(h) Requires each licensee to publicly display his license;
(i) Requires each licensed vendor to furnish his customers a sales slip showing the date and amount of the sale and the name and address of the vendor;
(j) Prohibits licensees from doing business within one-half mile of a fixed business establishment selling identical or similar products;
(k) Requires each licensee to furnish evidence to the Police Jury of proper authorization to use the site from which he proposes to sell;
(Z) Requires each licensee to furnish to the Police Jury an appropriate certificate from the Health Unit where applicable;
(m) Reserves to the Police Jury the power to provide additional rules and regulations;
(n) Exempts persons selling their own agricultural products or persons whose gross annual receipts from sales do not exceed $5,000.00; and
(o) Provides a penalty for violations of the ordinance.
“Section 2 provides for the repeal of ordinances or parts of ordinances which are in conflict therewith. The ordinance does not contain the so-called ‘severability clause’ or ‘saving clause.’
“Prior to the effective date of the ordinance suit was filed seeking a preliminary injunction and alleging that the ordinance was unconstitutional for the following reasons, to-wit:
(l) that the ordinance places an unreasonable burden on the interstate commerce in violation of the U.S. Constitution;
(2) that the ordinance is unrelated to the public welfare and is therefore an unconstitutional exercise of the police power;
(3) that the ordinance denies equal protection because it exempts certain persons from its provisions;
*240 (4) that the ordinance constitutes an unreasonable and arbitrary deprivation of petitioner’s right to engage in business; and
(5) that the ordinance is vague and susceptible of selective enforcement.
“The issuance of a preliminary injunction was stipulated and trial was subsequently held. At the trial Mr. Charles Forgette, the plaintiff, testified that he lives in the city of DeRidder in an adjoining parish and sells tools and auto stereos from two vehicles at different locations including two locations in Vernon Parish. He has been in such business for approximately five years. During the preceding year he paid a $10 per vehicle occupational license tax and had gross sales in the neighborhood of $15,000 to $18,000. Mr. Forgette operates primarily from two locations in Vernon Parish. One such location is on the Entrance Road leading to Fort Polk across from a McDonald’s restaurant and the other is near or at the intersection of Louisiana Highway 10 and Louisiana Highway 467 which is also in the vicinity of Fort Polk. His customers are mostly soldiers.
“Lt. George Gaskin, executive officer of Troop H, Louisiana State Police testified that he has been with the Louisiana State Police for 14 years and is familiar with numerous complaints by motorists concerning congestion on Entrance Road and view obstruction at the intersection of Louisiana Highway 10 and Louisiana Highway 467 caused by the activities and presence of roadside vendors. He further testified that Entrance Road is not a state or parish highway, but that pursuant to agreement between the State of Louisiana and the United States, the state police are responsible for traffic control and, consequently, he is familiar with traffic conditions on the road. According to Lt. Gaskin this 2.4 mile strip of road has the highest accident rate of any similar distance of highway located within the three-parish area policed by his troop. On cross-examination he testified that there are numerous business places along Entrance Road, that it is nearly always congested and admitted that he could not relate the accidents to the roadside vendors.
“Mr. Bill Bailey, executive vice-president of the Leesville-Vernon Parish Chamber of Commerce testified that he had received numerous complaints from both merchants and private citizens concerning roadside vendors. He did not detail the complaints except a complaint that such vendors were not paying taxes.
“Mr. Thomas H. Ford, president of the Police Jury, testified that he had received numerous complaints by dissatisfied customers of roadside vendors and other complaints that their activity caused traffic congestion and created safety problems. He felt there was very little regulation of such vendors and, although he acknowledged that the ordinance might benefit merchants with a fixed place of business he denied that the reason for adopting the ordinance was the protection of such merchants.
“The contention that the ordinance in question places an unreasonable burden on interstate commerce and is therefore in violation of the commerce clause of the United States Constitution is without merit. The fact that the plaintiff may buy his merchandise in another state does not alter the fact that the only activity sought to be taxed or regulated is the sale of merchandise without a fixed place of business within Vernon Parish, Louisiana. The fact that purchases made elsewhere may constitute an integral part of the plaintiff’s business does not render an otherwise valid tax or regulation unconstitutional. See State v. El Rito Transp. Co., Inc., Sup.Ct. (1939) 193 La. 548, 190 So. 803.
“Equally without merit is the contention that the subject ordinance is unrelated to the public welfare and is therefore an unconstitutional exercise of the police power. That hawking, peddling and sales without a fixed place of business, are concerned with the public welfare is so clear as not to require elaboration. Recognizing this fact the legislature adopted Act 128 of 1900, *241 now incorporated in the law as R.S. 33:4831 [1] which provides:
‘All police juries may pass ordinances regulating and defining hawking and peddling. Police juries may enforce these ordinances by fine or imprisonment.’
See also R.S. 47:341 [2] for legislative authorization for local governments to impose an annual license tax upon the pursuit of a trade, profession, vocation, calling, or business within the territorial jurisdiction of such local governmental subdivision.
“The ordinance attacked herein purports to exempt from its provisions, except the requirement of Section I, Subsection A that an occupational license be obtained, all persons selling their own agricultural products and persons whose gross annual receipts from sales do not exceed the sum of $5,000.00. This provision is attacked as a denial of equal protection of the law.
“To the extent that the subject ordinance is treated as the imposition of an annual license tax, it is of more concern that it may impose an illegal tax upon persons exempt from such taxation than that the exclusion of those persons discriminates against the plaintiff. The grant of authority to local governments to impose such a tax is found in R.S. 47:341 A and is limited by the provisions of R.S. 47:341 B which latter subsection provides:
‘B. The annual license tax imposed on any individual, corporation, partnership, or other legal entity shall not exceed the tax which could have been imposed pursuant to Article VI Section 28 of the Constitution of Louisiana and to R.S. 47:342— 47:405 on such individual, corporation, partnership, or other legal entity by a local governmental subdivision on December 31,1981, and such tax shall be subject to all exemptions, limitations, and provisions of law which were in effect on December 31, 1981.’
Article VI, Section 28, Louisiana Constitution provides that unless authorized by a vote of two-thirds of the elected members of each house of the legislature the governing authority of a local governmental subdivision may not impose an occupational license tax greater than that imposed by the state. R.S. 47:368 provides as set forth therein for the tax upon peddlers and hawkers and subsection D specifically provides:
‘D. Peddlers and hawkers selling only poultry, eggs, fruit and vegetables shall pay only one-fifth of the graded license fixed in Subsection A of this Section; and any person vending his own farm produce exclusively shall pay no license.’ (emphasis supplied)
Ordinance No. 8 of 1981 referred to in Section I, Subsection A of the instant ordinance is not in evidence. However, if subsections A and H of Section I impose a license tax on persons selling his own farm produce exclusively, such tax is illegal and unconstitutional. Considered as a revenue measure there appears no reason why persons doing an annual volume of business less than $5000.00 in gross sales may not be excluded.
“Such classification and exemption is likewise reasonable considered as a regulatory measure. If safety of motorists, elimination of congestion and minimizing the *242 number of consumers allegedly made the victim of unsatisfactory transactions with roadside vendors are proper considerations for the police jury in providing for the public welfare, morals and safety, then consideration of frequency and volume of business is rationally related. Unless a statute interferes with the exercise of fundamental personal rights or is drawn upon inherently suspect distinctions such as race or religion, its constitutionality is presumed and the jurisprudence requires only that the classification challenged be rationally related to a legitimate governmental interest. See City of New Orleans v. Dukes, (1976) 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511. In Harry’s Hardware, Inc. v. Parsons, Sup.Ct. (1982) 410 So.2d 735 the Court said:
‘Not every discrimination promulgated by statute is unconstitutional. The constitutional safeguard is offended only if the discriminatory classification rests on grounds wholly irrelevant to the achievement of the state’s objective.’
“The plaintiff contends that the ordinance attacked constitutes an arbitrary and unreasonable deprivation of his right to engage in business. ‘Police power’ is the power of a governmental body to regulate reasonably the actions of its individual citizens in order to protect or promote the public health, safety, morals, peace or general welfare. Laws which exceed the bounds of reasonableness violate due process of law. The test of ‘reasonableness’ is whether there is a real and substantial relationship between the regulation imposed and the prevention of injury to the public or the promotion of the general welfare. See City of Shreveport v. Curry, Sup.Ct. (1978) 357 So.2d 1078. A court should not interfere with legislative discretion nor substitute its judgment for legislative discretion, except where the legislative action is so clearly arbitrary and capricious as to be unreasonable. Hunter v. Shreveport, Ct.App.2d Cir. (1968) 216 So.2d 140; writ refused. In assessing the reasonableness of an ordinance the motives of those exercising the legislative function are not to be questioned. The reasonableness of the ordinance itself is the primary issue. City of Crowley Firemen v. City of Crowley, Ct.App. 3rd Cir. (1972) 294 [264] So.2d 368. The ultimate constitutionality of the ordinance can be determined only by an examination of its particular provisions. Harry’s Hardware, Inc. v. Parsons, supra.
“Local government has a legitimate interest in relieving traffic congestion, eliminating view obstruction, collecting revenue, providing consumer protection from hawkers, peddlers and itinerant vendors, and even in providing certain reasonable protection to local merchants with a fixed place of business. It becomes necessary to determine whether the particular provisions of Ordinance 1 of 1984 are reasonably related to these objectives and whether they are inherently unreasonable.
“It is not inherently unreasonable and is reasonably related to legitimate governmental interests to require that vendors publicly display their license, that vendors furnish customers a sales slip showing the date and amount of the sale and the name and address of the vendor, to prohibit them going upon property not owned by them without authorization to do so and to require such vendors to comply with lawfully mandated health requirements.
[[Image here]]
“Considering the objective of providing consumer protection against misrepresentation and deception and the itinerant nature of the vendor sought to be regulated by this ordinance, the requirement to furnish a surety bond and the requirement that such vendors designate an agent for service of process who is readily identifiable and available for service of process cannot be said to be either unduly burdensome or unrelated to a legitimate governmental interest.”
The portion of the trial judge’s reasons for judgment not appealed from is omitted.[3]
*243 The trial court upheld Section 1, subsection F(4) of the ordinance, which precludes itinerant vendors from conducting their business within one-half mile of a fixed place of business selling the same or similar products. The trial court held that this prohibition seems to be, but in fact is not, ultra vires and discriminatorily restrictive. In upholding the ordinance, the trial court cited several cases of our Supreme Court which upheld municipal ordinances which established public markets and forbade the sale of certain products within a specific distance from such markets. See Town of St. Martinville v. Dugas, 158 La. 262, 103 So. 761 (1925); City of New Orleans v. Fargot, 116 La. 369, 40 So. 735 (1906); City of New Orleans v. Graffina, 52 La.Ann. 1082, 27 So. 590 (1900); State v. Namias, 49 La. App. 618, 21 So. 852 (1897). In each of these cases, the municipal government regulated the market to ameliorate the public welfare by improving sanitary conditions or decreasing public nuisances. A legitimate public interest was promoted in each case.
In the case sub judice, we share the trial court’s apprehension as to the Subsection’s validity, but resolve the issue in favor of the Police Jury. The nuances of permissible state economic regulation have recently been addressed in State Ex Rel. Guste v. K-Mart Corp., 462 So.2d 616, 618 (La.1985):
“The Fourteenth Amendment gives substantial latitude to the individual states in promulgating laws through their police power. State laws may be constitutional even if they create classifications of the affected constituency and result in uneven treatment to the different statutory classes. The legislature’s wisdom in enacting such discriminatory laws will not be overridden if ‘any set of facts reasonably may be conceived to justify [the laws]. McGowan v. Maryland, supra, [366 U.S. 420] at 425-26, 81 S.Ct. [1101] at 1104-05, [6 L.Ed.2d 393 (1961)] [Emphasis added.]
Such justification is usually determined by an analysis of the law’s purpose and of the means by which the purpose is carried out. If the purpose or effect of the statute is to discriminate against so-called suspect classifications, such as race or alienage, or involves a constitutionally protected area such as freedom of expression, the laws will be strictly scrutinized. If such suspect classifications are not involved, then the statutory means need only be rationally related to a legitimate statutory end.
In the words of the United States Supreme Court:
‘When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. See, e.g., Lehnhausen v. Lake Shore Auto Parts Co. 410 U.S. 356, 93 S.Ct. 1001 [35 L.Ed.2d 351] (1973). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step, Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717 [16 L.Ed.2d 828] (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. See, e.g., Williamson v. Lee Optical Co. 348 U.S. 483, 488-489, 75 S.Ct. 461 [464-465, 99 L.Ed. 563] (1955). In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect *244 lines, see, e.g., Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, 72 S.Ct. 405 [407, 96 L.Ed. 469] (1952); in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. See, e.g., Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028 [1032, 10 L.Ed.2d 93] 95 A.L.R.2d 1347 (1963).’ City of New Orleans v. Dukes, 427 U.S. 297, 303-04, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976). (Emphasis Added).”
As has been noted, governing bodies are accorded wide latitude in the regulation of their local economies under their police powers and even discriminatory laws will not be overridden if any set of facts reasonably may be conceived to justify the ordinance. K-Mart Corporation, supra at 618, 19. Such a set of facts we can conceive.
The Police Jury may have determined that a gradual thinning-out of street side vendors would ameliorate the congested traffic situation which now exists on some Vernon Parish arteries. It is not up to us to judge the wisdom of the policy. The policy does not affect fundamental rights nor does it proceed along suspect lines.[4]
Mr. Forgette also asserts that the provisions of Subsection F(4) are vague and lend themselves to selective enforcement. We dispel this argument by holding that the language in the ordinance is not vague and that there has been no showing that the ordinance is susceptible to selective enforcement.
Appellant suggests that the phrase “fixed place of establishments selling identical or similar products” is vague. We are aware that ordinances providing for criminal sanctions must pass a strict vagueness test. The statute “must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.” Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972). But our Supreme Court has noted that:
“[T]hese strict standards are tempered by the fact that the regulations under scrutiny are economic in nature, directed not to the general populace but rather to individuals in the business community.
‘... Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process_’ Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).”
K-Mart Corporation, supra at 621. Appellant does not suggest how the phrase in question is ambiguous; nor can we say the ordinance is vague given the commonsense meaning of the words.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellant, Charles Forgette.
AFFIRMED.

1. Mr. Forgette asserts that the Police Jury is not authorized to regulate "retailers” by virtue of this statute. He acknowledges that the Police Jury may regulate hawking and peddling. Mr. Forgette’s semantic argument is unconvincing. A peddler is merely a specific type of retailer. See Oden, Tax Collector, v. Zachery, 6 La.App. 594 (La.App. 1st Cir.1927).

2. LSA-R.S. 47:341(A) provides:
“A. In addition to all other license and excise taxes imposed by law, the governing authority of each local governmental subdivision is hereby authorized to levy an annual license tax upon each person pursuing a trade, profession, vocation, calling, or business within the territorial jurisdiction of the local governmental subdivision. The tax shall be classified and graded as set forth in this Chapter, based on the trade, profession, vocation, calling, or business conducted within the local governmental subdivision."

. This portion declares unconstitutional Section 1, Subsections C, D, and F(l) — "c," “A," and “g” as denominated by the trial judge, supra.

. Appellant asserts that his fundamental right to earn a livelihood is foreclosed by the ordinance. We are unconvinced that such a minimal restriction would deprive appellant of his right to work. At worst the regulation would require appellant to relocate a short distance.